# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1980-W |
| COMPLETE TITLE: | State of Wisconsin ex rel. Department of Natural Resources, |
| |         Petitioner, |
| |     v. |
| | Wisconsin Court of Appeals, District IV, Clean Wisconsin, Inc., Lynda A. Cochart, Amy Cochart, Roger D. DeJardin, Sandra Winnemueller, Chad Cochart and Kinnard Farms, Inc., |
| |         Respondents. |

PETITION FOR SUPERVISORY WRIT

| | |
|---|---|
| OPINION FILED: | April 3, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 15, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ABRAHAMSON, J. dissents joined by A.W. BRADLEY J. (opinion filed). |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioner, there were briefs filed by *Kevin M. LeRoy*, deputy solicitor general, with whom on the briefs were *Brad D. Schimel*, attorney general, and *Misha Tseytlin*, solicitor general. There was an oral argument by *Kevin M. LeRoy.*

For the respondents Clean Wisconsin, Inc., Lynda A. Cochart, Amy Cochart, Roger D. DeJardin, Sandra Winnemueller, and Chad Cochart, there was a brief filed by *Sarah Geers* and *Midwest Environmental Advocates*, Madison, with whom on the brief were *Katie Nekola* and *Clean Wisonsin*, *Inc.*, Madison. There was an oral argument by *Sarah Geers.*

For the respondent Wisconsin Court of Appeals, District IV, there was a brief filed by *John S. Skilton* and *Perkins Coie LLP*, Madison.  There was an oral argument by *John S. Skilton.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2016AP1980-W

STATE OF WISCONSIN               :        IN SUPREME COURT

**State of Wisconsin ex rel. Department of Natural Resources,**

      **Petitioner,**

      **v.**

**Wisconsin Court of Appeals, District IV, Clean Wisconsin, Inc., Lynda A. Cochart, Amy Cochart, Roger D. DeJardin, Sandra Winnemueller, Chad Cochart and Kinnard Farms, Inc.,**

      **Respondents.**

**FILED**

**APR 3, 2018**

Sheila T. Reiff
Clerk of
Supreme Court

PETITION for supervisory writ.   *Granted; rights declared; and stay on appeal lifted.*

¶1   DANIEL KELLY, J.   The Wisconsin Department of Natural Resources ("DNR") says its appeal in Clean Wisconsin, Inc. v. DNR, 2016AP1688 ("Clean Wisconsin") is pending in the wrong district, and asks us to exercise our supervisory authority to shepherd it to the correct venue.   Because we agree with the DNR, we grant its petition for a supervisory writ and vacate the order of the Wisconsin Court of Appeals transferring venue for Clean Wisconsin from District II to District IV.

¶2 We accepted review because this case presents an important issue of first impression regarding the right of an appellant to select appellate venue under Wis. Stat. § 752.21(2) (2015-16).[1]

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶3 The dispute giving rise to this petition for a supervisory writ involves the DNR's decision to reissue a Wisconsin Pollutant Discharge Elimination System ("WPDES") permit to Kinnard Farms, Inc. ("Kinnard Farms"), a dairy farm in Kewaunee County. After a group of five individuals (led by Lynda A. Cochart, hereinafter the "Cochart Petitioners") contested the decision, an administrative law judge concluded the permit should issue, but only with the addition of two conditions to which Kinnard Farms objected.[2] Kinnard Farms filed a petition with the DNR requesting removal of the conditions. The DNR initially denied the petition, but upon reconsideration found that "[n]either [of the conditions] may be imposed upon Kinnard [Farms] in this case, and therefore, these conditions will not be added to or modified into the WPDES Permit."

¶4 Clean Wisconsin, Inc. ("Clean Wisconsin") and the Cochart Petitioners each filed petitions seeking judicial review of the DNR's decision. Clean Wisconsin filed in Dane County

---

[1] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

[2] The nature of the conditions is not material to our analysis.

(the county of its residence), while the Cochart Petitioners filed in Kewaunee County (the county of their residence). The Circuit Court for Dane County, as the court in which the first petition was filed, exercised its statutorily-granted discretion to consolidate the Kewaunee County case into the Dane County case.[3] Subsequently, the Dane County Circuit Court entered judgment on the merits in favor of Clean Wisconsin and the Cochart Petitioners, restoring the contested permit conditions that the DNR had rejected. We will refer to Clean Wisconsin and the Cochart Petitioners collectively as the "Administrative Petitioners" so that we may more conveniently distinguish their arguments from those of the Court of Appeals when they diverge.

¶5 The DNR appealed the circuit court's decision, and selected District II as the appellate venue. A single court of appeals judge (sitting in District IV) issued an order, sua sponte, transferring venue from District II to District IV on August 31, 2016. The judge, relying on Wis. Stat. § 752.21(1), wrote that District IV is the proper venue because it encompasses the circuit court that issued the judgment from which the DNR appealed. The DNR moved for reconsideration. It asserted that § 752.21(2) gave it the right to select appellate venue because Clean Wisconsin had designated the circuit court venue. Sitting as a three-judge panel in District IV, the Court of Appeals denied the motion on September 29, 2016.

---

[3] See Wis. Stat. § 227.53(1)(a)3.

3

¶6 Approximately two weeks later, the DNR petitioned this court for a supervisory writ requiring the Court of Appeals to transfer venue back to District II. We stayed the appeal and asked the respondents for a response to the petition. We subsequently ordered full briefing and argument.

## II. DISCUSSION

### A. Supervisory Writs

¶7 The authority to issue supervisory writs depends on the constitutional grant of jurisdiction to this court. In relevant part, our constitution says:

(1) The supreme court shall have superintending and administrative authority over all courts.

(2) The supreme court has appellate jurisdiction over all courts and may hear original actions and proceedings. The supreme court may issue all writs necessary in aid of its jurisdiction.

(3) The supreme court may review judgments and orders of the court of appeals, may remove cases from the court of appeals and may accept cases on certification by the court of appeals.

Wis. Const. art. VII, § 3. We have previously observed that with the grant of jurisdiction come all the writs necessary to give it effect:

The framers of the constitution appear to have well understood that, with appellate jurisdiction, the court took all common law writs applicable to it; and with superintending control, all common law writs applicable to that; and that, failing adequate common law writs, the court might well devise new ones, as Lord Coke tells us, as "a secret in law."

4

Attorney Gen. v. Chicago & N.W. Ry. Co., 35 Wis. 425, 515 (1874) (construing our original constitution[4]); see State v. Buchanan, 2013 WI 31, ¶11, 346 Wis. 2d 735, 828 N.W.2d 847 ("As the court of original jurisdiction, we have discretion to issue a supervisory writ."); Madison Metro. Sch. Dist. v. Cir. Ct. for Dane Cty., 2011 WI 72, ¶74, 336 Wis. 2d 95, 800 N.W.2d 442 (2011) (stating that "a supervisory writ is dedicated to the discretion of the court of original jurisdiction").

¶8 "A supervisory writ is 'a blending of the writ of mandamus and the writ of prohibition.'" Madison Metro. Sch. Dist., 336 Wis. 2d 95, ¶74 (citation omitted). The court traditionally uses the writ of prohibition "to keep an inferior court from acting outside its jurisdiction when there [is] no adequate remedy by appeal or otherwise." Id., ¶76 (internal marks and citation omitted). The writ of mandamus, on the other hand, directs "a public officer to perform his plain statutory duties." Id., ¶75 (citing Menzl v. City of Milwaukee, 32 Wis. 2d 266, 275-76, 145 N.W.2d 198 (1966)). Thus, the

---

[4] The original provision of the 1848 Wisconsin Constitution, Wis. Const. art. VII, § 3, read:

> The supreme court, except in cases otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state; but in no case removed to the supreme court shall a trial by jury be allowed. The supreme court shall have a general superintending control over all inferior courts; it shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and other original and remedial writs, and to hear and determine the same.

supervisory writ "serves a narrow function: to provide for the direct control of lower courts, judges, and other judicial officers who fail to fulfill non-discretionary duties, causing harm that cannot be remedied through the appellate review process." State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶24, 271 Wis. 2d 633, 681 N.W.2d 110. A supervisory writ is "an extraordinary and drastic remedy that is to be issued only upon some grievous exigency." Id., ¶17 (internal marks and citation omitted).

¶9 A party may request a supervisory writ from this court by petition.[5] Wis. Stat. § (Rule) 809.71. To justify the writ, a petitioner must demonstrate that: "(1) an appeal is an inadequate remedy; (2) grave hardship or irreparable harm will result; (3) the duty of the trial court is plain and it . . . acted or intends to act in violation of that duty; and (4) the request for relief is made promptly and speedily." Kalal, 271 Wis. 2d 633, ¶17 (citation omitted). Our deliberation on whether to issue the writ "is controlled by equitable principles and, in our discretion, we can consider the

---

[5] The requirement that an aggrieved party must first seek such a writ from the court of appeals is excused here, of course, because the writ, if granted, would lie against that court. Wis. Stat. § (Rule) 809.71 ("A person seeking a supervisory writ from the supreme court shall first file a petition for a supervisory writ in the court of appeals under s. 809.51 unless it is impractical to seek the writ in the court of appeals. A petition in the supreme court shall show why it was impractical to seek the writ in the court of appeals or, if a petition had been filed in the court of appeals, the disposition made and reasons given by the court of appeals.").

6

rights of the public and third parties." Id. (internal marks and citation omitted).

¶10 We will consider only the first three factors identified above——the respondents do not contest the timeliness of the DNR's petition, and we agree that filing within two weeks of the Court of Appeals' order denying the motion for reconsideration is, under these circumstances, unquestionably "prompt and speedy." For the sake of analytical clarity, our opinion addresses the three factors in the following order. We begin with whether the Court of Appeals will violate a plain duty to hear the DNR's appeal in the proper district if the venue-transfer order stands. Then, we will consider whether an appeal would be an inadequate remedy. And finally, we will determine whether the DNR will suffer grave hardship or irreparable harm if the writ does not issue.

B. Plain Duty

1. Existence of the Duty

¶11 We start with determining whether the Court of Appeals has a plain duty to hear the DNR's appeal in the proper venue. A plain duty is one that is "clear and unequivocal and, under the facts, the responsibility to act [is] imperative." Id., ¶22 (internal marks and citation omitted). "[C]lear and unequivocal" does not require the duty to be settled or obvious. There may be a plain duty even when it involves "a novel question of law requiring harmonization of several statutory

7

provisions." See Madison Metro. Sch. Dist., 336 Wis. 2d 95, ¶84.[6]

¶12 Appellate venue is governed by Wis. Stat. § 752.21, which provides, in toto:

> (1) Except as provided in sub. (2), a judgment or order appealed to the court of appeals shall be heard

---

[6] The dissent suggests this directive is at odds with State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, ¶81, 363 Wis. 2d 1, 866 N.W.2d 165. It asserts that this court "reaffirmed that the obligation of a judge to correctly apply the law 'is not the type of plain legal duty contemplated by the supervisory writ procedure.'" Dissent, ¶64 (quoting Two Unnamed Petitioners, 363 Wis. 2d 1, ¶81). The dissent overlooked that the court was speaking to categories of duties, not the clarity with which the law imposes them. The court in Two Unnamed Petitioners was distinguishing between the court's general obligation to accurately apply the law to the facts of any given case, on the one hand, and on the other, those directives aimed at the court qua judicial tribunal, mandating how it is to carry out specific aspects of its work. The former category contains those matters that are the subjects of appeals. With respect to the latter, however, the court observed that supervisory writs "provide for the direct control of lower courts, judges, and other judicial officers who fail to fulfill non-discretionary duties, causing harm that cannot be remedied through the appellate review process." Two Unnamed Petitioners, 363 Wis. 2d 1, ¶81 (quoting State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶24, 271 Wis. 2d 633, 681 N.W.2d 110) (emphasis in original). When the court is under an obligation to do its business in a specific manner, a supervisory writ can be a proper method of ensuring it does so. That is why Two Unnamed Petitioners can comfortably co-exist with Madison Metro. The former addresses category, while the latter addresses clarity. Consequently, a court's duty, even when it derives from the "harmonization of several statutory provisions," is still the proper subject of a supervisory writ so long as it falls into the proper category. See Madison Metro. Sch. Dist. v. Cir. Ct. for Dane Cty., 2011 WI 72, ¶84, 336 Wis. 2d 95, 800 N.W.2d 442.

in the court of appeals district which contains the court from which the judgment or order is appealed.

(2) A judgment or order appealed from an action venued in a county designated by the plaintiff to the action as provided under s. 801.50(3)(a) shall be heard in a court of appeals district selected by the appellant but the court of appeals district may not be the court of appeals district that contains the court from which the judgment or order is appealed.

¶13 The first subsection of Wis. Stat. § 752.21 contains the general rule controlling appellate venue. The second subsection contains a specific rule, which applies only to the subset of cases in which the plaintiff designated venue in the circuit court pursuant to Wis. Stat. § 801.50(3)(a). However, both the general and specific rules speak in mandatory terms. The general rule uses the mandatory "shall" in requiring the court to hear the appeal in the district encompassing the circuit from which the appeal is taken.[7] The specific rule, when applicable, is no less mandatory in its requirement that the court hear the appeal in the district selected by the appellant. Thus, regardless of whether the general or specific rule determines venue, the court of appeals has no discretion with respect to where it must hear the appeal. Further, the correct venue does not depend on uncertain factual developments or

---

[7] "The general rule is that the word 'shall' is presumed mandatory when it appears in a statute." Karow v. Milwaukee Cty. Civil Serv. Comm'n, 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978) (citation omitted); Heritage Farms, Inc. v. Markel Ins. Co., 2012 WI 26, ¶32, 339 Wis. 2d 125, 810 N.W.2d 465 (stating that when construing a statute, "we presume that the word 'shall' is mandatory" (citation omitted)).

circumstances outside the contemplation of the statute. Nor does the court of appeals have the option of not acting: The appeal must be heard somewhere. Therefore, the obligation to venue the appeal in the correct district is clear, unequivocal, and mandatory. It is, therefore, a "plain duty" within the meaning of our supervisory writ jurisprudence.

### 2. Compliance with the Duty

¶14 Whether the Court of Appeals acted consonantly with its plain duty when it transferred the DNR's appeal from District II to District IV depends on the requirements of three statutes, all of which have something to say about venue in this case. The statute controlling appellate venue is Wis. Stat. § 752.21, which we quoted above. Then there is Wis. Stat. § 801.50(3)(a), which governs circuit court venue. And finally, there is Wis. Stat. § 227.53(1)(a)3., which restricts venue eligibility for administrative appeals such as the one sub judice.

¶15 We determine the meaning of these statutes by focusing on their text, context, and structure. "[S]tatutory interpretation 'begins with the language of the statute," and we give that language its "common, ordinary, and accepted meaning." Kalal, 271 Wis. 2d 633, ¶¶45-46 ("Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes . . . ."). In

10

performing this analysis, we carefully avoid ascribing an unreasonable or absurd meaning to the text.  Id., ¶46 ("[S]tatutory language is interpreted . . . reasonably, to avoid absurd or unreasonable results.").  We may also look to the statute's history where, as here, there has been a significant revision to the language in which we are interested.  Cty. of Dane v. LIRC, 2009 WI 9, ¶27, 315 Wis. 2d 293, 759 N.W.2d 571 ("'A review of statutory history is part of a plain meaning analysis' because it is part of the context in which we interpret statutory terms." (citation omitted)).  If we determine the statute's plain meaning through this methodology, we go no further.  Kalal, 271 Wis. 2d 633, ¶45 ("If the meaning of the statute is plain, we ordinarily stop the inquiry." (internal marks and citation omitted)).  See generally Daniel R. Suhr, Interpreting Wisconsin Statutes, 100 Marq. L. Rev. 969 (2017).

a. Applicability of Wis. Stat. § 801.50(3)(a)

¶16 The presenting question is whether the general or specific appellate venue rule of Wis. Stat. § 752.21 is operative in this case.  According to the express terms of that statute, the answer depends on whether the circuit court venue was "designated by the plaintiff" pursuant to Wis. Stat. § 801.50(3)(a).  This statute, in turn, says that:

> Except as provided in pars. (b) and (c),[8] all actions
> in which the sole defendant is the state, any state

_____

[8] The exceptions mentioned here are not relevant to this case:

(continued)

board or commission, or any state officer, employee, or agent in an official capacity shall be venued in the county designated by the plaintiff unless another venue is specifically authorized by law.[9]

¶17 The Administrative Petitioners tell us that Wis. Stat. § 801.50(3)(a) cannot apply at all to these proceedings for two reasons.[10] First, they say it applies to "actions," not "special proceedings" (like judicial review of administrative agency decisions). And second, they say § 801.50(3)(a) cannot apply because they were "petitioners" in the circuit court, and the statute refers only to "plaintiffs."

¶18 With respect to the first objection, it is true that § 801.50(3)(a) refers only to "actions." But that term encompasses "special proceedings" as well: "Proceedings in the

---

(b) All actions relating to the validity or invalidly of a rule shall be venued as provided in s. 227.40(1).

(c) An action commenced by a prisoner, as defined under s. 801.02(7)(a)2., in which the sole defendant is the state, any state board or commission, or any state officer, employee, or agent in an official capacity shall be venued in Dane County unless another venue is specifically authorized by law.

Wis. Stat. § 801.50(3)(b)-(c).

[9] As an "administrative arm" of the state, the DNR is the state for purposes of this venue provision. See Metzger v. Dep't of Taxation, 35 Wis. 2d 119, 131, 150 N.W.2d 431 (1967) (stating that the Wisconsin Department of Taxation is "a mere administrative arm of the state" and, thus, suit against the Department is an action against "the state" for sovereign immunity purposes).

[10] The Court of Appeals did not advance this argument in its brief.

12

courts are divided into actions and special proceedings," and "[i]n chs. 801 to 847, 'action' includes 'special proceeding' unless a specific provision of procedure in special proceedings exists." Wis. Stat. § 801.01(1). The rules of civil procedure apply to both types of proceedings: "Chapters 801 to 847 govern procedure and practice in circuit courts of this state in all civil actions and special proceedings whether cognizable as cases at law, in equity or of statutory origin except where different procedure is prescribed by statute or rule." § 801.01(2); Wagner v. State Med. Examining Bd., 181 Wis. 2d 633, 639, 511 N.W.2d 874 (1994) ("[W]hen a conflict occurs between the rules of civil procedure and ch. 227, the dictates of ch. 227 must prevail."); State ex rel. Town of Delavan v. Cir. Ct. for Walworth Cty., 167 Wis. 2d 719, 725, 482 N.W.2d 899 (1992) ("As chs. 801 to 847 apply to special proceedings, sec. 801.58(7) necessarily applies to ch. 227 judicial reviews, unless foreclosed by different procedure prescribed by ch. 227.").

¶19 Therefore, in the absence of a contrary provision in chapter 227, it does not matter that the Administrative Petitioners commenced this case as a "special proceeding" rather than as an "action." Nor is this the first time we have used Wis. Stat. § 801.50 in the specific type of special proceeding known as "judicial review." See, e.g., Drow v. Schwarz, 225 Wis. 2d 362, 367, 592 N.W.2d 623 (1999), as amended on denial of reconsideration (June 25, 1999) (§ 801.50 controlling venue in certiorari review proceeding); Aparacor, Inc. v. DILHR, 97

13

Wis. 2d 399, 407, 293 N.W.2d 545 (1980) (§ 801.50 controlling venue in judicial review proceeding); Johnson v. Berge, 2003 WI App 51, ¶11 n.3, 260 Wis. 2d 758, N.W.2d 418 ("The trial court may consider whether to transfer the entire case to Dane County pursuant to Wis. Stat. § 801.52, or whether to transfer Johnson's Wis. Stat. ch. 227 claim to Dane County and itself resolve Johnson's other issues."). The Administrative Petitioners provided no authority for the proposition that § 801.50(3) cannot apply to judicial review of an agency decision. Nor did they even acknowledge our opinions in Aparacor, Inc. or Drow.

¶20 The second objection gives us no reason to doubt the applicability of Wis. Stat. § 801.50(3)(a) because the party denominations have no significance in this case. It is standard practice to refer to the one who files the initiating document in a special proceeding (such as a petition for judicial review) as a "petitioner." And that, by itself, has never ousted chapters 801 through 847 from their authoritative role. See Wis. Indus. Energy Grp., Inc. v. Pub. Serv. Comm'n, 2012 WI 89, ¶¶1, 13, 342 Wis. 2d 576, 819 N.W.2d 240 (applying Wis. Stat. § (Rule) 809.61 to petition for judicial review under both Wis. Stat. § 196.41 and Wis. Stat. § 227.52); Drow, 225 Wis. 2d at 362-66 (applying Wis. Stat. § 801.50 even though parties were denominated as "petitioner" and "respondent"); Town of Delavan, 167 Wis. 2d at 721 (holding that Wis. Stat. § 801.58(7) applies in a ch. 227 judicial review; also applying Wis. Stat. § (Rule) 809.61); Wis.'s Envtl. Decade, Inc. v. DILHR, 104

14

Wis. 2d 640, 644, 312 N.W.2d 749 (1981) (applying Wis. Stat. § 808.05(1) in case involving an underlying petition for review). The Administrative Petitioners cite no authority for the proposition that this difference in nomenclature has any effect on the applicability of this statute. Consequently, § 801.50 applies to judicial review of an agency decision——but only so long as it does not contradict a relevant chapter 227 provision.

¶21 And that brings us to the third venue-related statute of interest. The respondents say Wis. Stat. § 227.53(1)(a)3. conflicts with, and negates, a petitioner's ability to "designate" venue pursuant to Wis. Stat. § 801.50(3)(a) by requiring that it file its petition in its county of residence. Specifically, § 227.53(1)(a)3. says that "[i]f the petitioner is a resident, the proceedings shall be held in the circuit court for the county where the petitioner resides." This is important because, if the respondents are right, then the Administrative Petitioners could not have "designated" venue for the circuit court proceedings, which in turn would mean the general rule for appellate venue (Wis. Stat. § 752.21(1)) would apply, instead of the specific rule (§ 752.21(2)).

¶22 The heart of the contest between the DNR and the respondents, therefore, lies in this question: Does a plaintiff "designate" the county for circuit court venue even when Wis. Stat. § 227.53(1)(a)3. specifies which county that must be?

### b. Does "Designate" Mean "Choose"?

¶23 Each of the respondents' arguments circles back to a central theme: The Administrative Petitioners cannot be understood to have "designated" a county for venue (within the meaning of Wis. Stat. § 801.50(3)(a)) unless they had the ability to choose the county to designate. And, they say, because Wis. Stat. § 227.53(1)(a)3. reduced their options to one (their county of residence), there was no choice to be made, and so they did no designating. To resolve this issue, we must determine whether a plaintiff can "designate" venue even when there is only one county in which the matter may be filed.

¶24 The operative sentence from Wis. Stat. § 801.50(3)(a) comprises, as everyone agrees, a rule of general applicability and an exception. The general rule is that "all actions in which the sole defendant is the state . . . shall be venued in the county designated by the plaintiff." § 801.50(3)(a). That rule applies "unless another venue is specifically authorized by law." Id. The respondents say the exception is operative in this case because Wis. Stat. § 227.53(1)(a)3. represents "another venue . . . specifically authorized by law," thereby depriving the Administrative Petitioners of their choice of county. The DNR, however, says the general rule remains in effect. "Designating," it says, is not the same thing as "choosing," and § 227.53(1)(a)3. simply told the Administrative Petitioners which county to "designate."

¶25 Our practice is to give words their natural meaning, and we often begin with respected dictionaries to find it.[11] Here, they are of little help. The term "designate" is perfectly capable of carrying the meanings proposed by both the DNR and the respondents. One definition says the word means "[t]o point out, indicate; to particularize, specify." 4 The Oxford English Dictionary 520 (2d ed. 1989) (first definition). So, as the DNR urges, "designated by the plaintiff" can be reasonably understood to mean "indicated or specified by the plaintiff," an act that does not necessarily require a choice. Even if the action must be filed in one specific county, the DNR says, the plaintiff still indicates or specifies that county when filing. But "designated by the plaintiff" could equally well mean "chosen by the plaintiff," because "designate" can also mean "select." Id. at 521 (fifth definition). And if that is what the phrase means, then none of the Administrative Petitioners chose a county inasmuch as the choice was made by Wis. Stat. § 227.53(1)(a)3. Because the definitions are in equipoise, we will have to look elsewhere to determine whether "designate" must mean "choose."

---

[11] "In construing a statute, the general rule is that all words and phrases should be construed according to common and approved usage unless a different definition has been designated by the statutes. We may resort to a dictionary to ascertain the common and approved usage of a term not defined by the statute." In re Commitment of Curiel, 227 Wis. 2d 389, 404-05, 597 N.W.2d 697 (1999); see Kalal, 271 Wis. 2d 633, ¶¶45, 54 (stating that "[s]tatutory language is given its common, ordinary, and accepted meaning," and looking at The American Heritage Dictionary to determine plain meaning of statutory text).

17

¶26 The term "designate" entered our appellate and circuit court venue statutes at the same time via 2011 Wisconsin Act 61. So we next consider the text and structure of that act. The entire purpose of the act was to change the treatment of venue in both the circuit and appellate courts when the state is the sole defendant, so it is brief and to the point. The parts that interest us are §§ 2 and 3g, which provide in relevant part:

> Section 2.  752.21(2) of the statutes is created to read:
>
> 752.21 (2) A judgment or order appealed from an action venued in a county designated by the plaintiff to the action as provided under s. 801.50(3)(a) shall be heard in a court of appeals district selected by the appellant but the court of appeals district may not be the court of appeals district that contains the court from which the judgment or order is appealed.
>
> Section 3g.  801.50(3) of the statutes, as affected by 2011 Wisconsin Act 21, is renumbered 801.50(3)(a) and amended to read:
>
> 801.50(3)(a) ~~All~~ Except as provided in ~~this subsection~~ pars. (b) and (c), all actions in which the sole defendant is the state . . . shall be venued in ~~Dane County~~ the county designated by the plaintiff unless another venue is specifically authorized by law.

2011 Wis. Act 61, §§ 2, 3g ("Act 61").

¶27 "Designate," of course, appears in both § 2 (creating the new appellate venue provision) and § 3g (amending the circuit court venue provision). If we viewed § 3g of the act in isolation, we could easily conclude that "designate" means "choose." Before Act 61, a plaintiff suing the state was required to file his case in Dane County. With the revision introduced by Act 61, however, he may file in any county he

18

wishes. Thus, he must necessarily choose which it will be, and "designate" is quite capable of describing that act. But when we look at the act as a whole, which we are bound to do,[12] we see that the act of choosing is assumed as a predicate to the act of designating.

¶28 When the legislature used the term "designated" in the appellate venue section of the act (2011 Wis. Act 61, § 2), it juxtaposed it against the term "selected." Whereas the plaintiff "designates" venue in the circuit court, the appellant "selects" venue in the court of appeals. When the legislature uses different terms in the same act, we generally do not afford them the same meaning. See Gister v. Am. Family Mut. Ins. Co., 2012 WI 86, ¶33, 342 Wis. 2d 496, 818 N.W.2d 880 ("[W]here the legislature uses similar but different terms in a statute, particularly within the same section, we may presume it intended the terms to have different meanings." (brackets in original) (internal marks and citation omitted)); see Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012) (defining canon of "Presumption of Consistent Usage" as requiring, inter alia, that "a material variation in terms suggests a variation in meaning"). So "designate" cannot mean "select" in the context of § 2 of Act 61.

---

[12] Kalal, 271 Wis. 2d 633, ¶46; see Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012) (defining "Whole-Text Canon" as requiring that "[t]he text must be construed as a whole").

¶29 Unlike "designate," "select" does not carry a troubling multiplicity of definitions. In its transitive verb form, it means one thing, and one thing only: "[t]o choose." 14 The Oxford English Dictionary 901 (2d ed. 1989). These terms are not just in related statutes. They are in the same act, the same section, and the same sentence. And the words were chosen by the same legislature. With this degree of specificity and particularity, we will not understand them to bear the same meaning. Because "select" means "to choose," "designate" cannot.[13]

_____

[13] The Court of Appeals agreed the words "designate" and "select" must carry different meanings, but attempted to explain the distinction between them without identifying any substantive difference. Its brief said:

> [I]n this interpretation the words do have different meanings: "designate" is something that a plaintiff does in circuit court, while "select" is something that an appellant does in the court of appeals. It is entirely reasonable that the legislature would choose two different words for these different acts, so as to avoid any potential confusion or commingling of the two concepts. No further explanation is required to explain why different words were used.

(continued)

¶30 This provides significant insight into what "designated" means in the context of Wis. Stat. § 801.50(3)(a). When the legislature uses a particular word more than once in an act, we understand it to carry the same meaning each time, absent textual or structural clues to the contrary. State ex rel. Gebarski v. Cir. Ct. for Milwaukee Cty., 80 Wis. 2d 489, 495, 259 N.W.2d 531 (1977) (stating that "there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning" (quoting Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932)); see Bank Mut. v. S.J. Boyer Const., Inc., 2010 WI 74, ¶31, 326 Wis. 2d 521, 785 N.W.2d 462 ("When the same term is used throughout a chapter of the statutes, it is a reasonable deduction that the legislature intended that the term possess an identical meaning each time it appears."); DaimlerChrysler v. LIRC, 2007 WI 15, ¶29, 299 Wis. 2d 1, 727 N.W.2d 311 ("It is a

_____

Some further explanation would have been helpful. This case turns on whether these words have distinct meanings, so understanding how they describe different concepts is essential to our analysis. But the Court of Appeals tells us only that "designate" means "something," that "select" also means "something," and that they are different depending on the court in which they occur. That's not much to go on, especially when the Court of Appeals, elsewhere in its brief, suggests the two actually mean the same thing: "[T]he statutes at issue allow an appellant to have a choice of forum when the plaintiff has a choice of forum . . . ." If both "designate" and "select" mean "choose," then the plaintiff in the circuit court and the appellant in the court of appeals are doing the exact same thing. So the Court of Appeals has not, in fact, offered an explanation of how the act of "designating" differs from the act of "selecting."

21

basic rule of construction that we attribute the same definition to a word both times it is used in the same statute . . . ."); Harnischfeger Corp. v. LIRC, 196 Wis. 2d 650, 663, 539 N.W.2d 98 (1995) ("[A]ttributing the same definition to a word both times it is used in the same statute follows another basic principle of statutory construction."); Scalia & Garner, supra ¶28, at 170 (defining canon of "Presumption of Consistent Usage" as requiring, inter alia, that "[a] word or phrase is presumed to bear the same meaning throughout a text"). We see no textual or contextual reason to believe the legislature assigned the word "designate" one meaning with respect to § 2 of the act, and a different meaning in § 3g. Thus, because "designate" does not mean "choose" in § 2, it cannot mean "choose" in § 3g either.[14]

---

[14] The dissent says we should understand "designate" to mean "choose" because that's how the Legislative Reference Bureau understood it, and the Bureau forwarded its understanding of Act 61 (then 2011 S.B. 117) to members of the legislature. See dissent, ¶59. The dissent says the Bureau "explained that the bill 'permitted' plaintiffs to designate the county within which to bring an action." Id. Presumably, the dissent wishes us to analyze the statute as though the legislature had adopted the Bureau's language instead of the language upon which it actually voted. Even if this substitution would justify the dissent's preferred construction (on which we express no opinion), there is nothing to suggest we should engage in this post hoc transformation of Act 61.

(continued)

22

¶31  Therefore, when a plaintiff "designates" venue in the circuit court, it means he is specifying venue, not choosing it. The fact that Wis. Stat. § 227.53(1)(a)3. eliminates a plaintiff's choice of venue would be of some moment only if Wis. Stat. § 801.50(3)(a) speaks to the plaintiff's choice.  It does not.  The choosing, if there is any choosing to be done, takes place before the plaintiff designates venue; section 801.50(3)(a) is not cognizant at all of whether a choice preceded the designation.[15]  Because there is no conflict between

---

We can assume all legislators received the Bureau's memo. But we have no idea how many read it, or whether the Bureau's use of "permit" caught their attention or influenced their understanding of the bill, or whether (assuming it did) the Bureau's word-choice influenced their votes, and if it did, whether a majority of each chamber was persuaded to adopt the dissent's understanding of the language they enacted because the Bureau used the word "permit" in its memo.  So the dissent raises an interesting historical question (to which we will never know the answer), but it is a question that has nothing to do with the plain meaning of Act 61.  The same is true of the "Fiscal Estimate Narrative" to which the dissent refers in paragraph 60.

The dissent says we would show greater respect for the legislators if we assumed the Bureau's memo changed their understanding of their own bill.  See dissent, ¶¶62-63.  That would seem an odd mark of respect.  We believe it is much more respectful to assume they are capable of adopting language that expresses their intent, and that they did not adopt the Bureau's language because they did not wish to.

[15] The dissent says the phrase "designated by the plaintiff" should have the same meaning in Wis. Stat. § 801.50(3)(a) as it does in § 801.50(2)(d).  Dissent, ¶54.  We have no occasion to construe paragraph (2)(d) today, and the dissent identified no construction thereof that is at odds with our understanding of paragraph (3)(a).

23

§ 801.50(3)(a) and § 227.53(1)(a)3., we apply them both and conclude that even when the latter statute eliminates any opportunity to choose a county, the plaintiff still designates venue within the meaning of § 801.50(3)(a).

¶32 This, however, is only one step in the process of understanding the interrelationship among the three venue-related statutes.  When two or more petitions challenge an agency's decision, and when they are filed in different counties, Wis. Stat. § 227.53(1)(a)3. gives the circuit court authority to determine venue.  Therefore, we must decide whether the circuit court's exercise of that authority in this case caused Dane County to be "another venue . . . specifically authorized by law."

c.  Other Authorized Venues

¶33 As we have already seen, the plaintiff's designation controls venue in a case solely against the state, "unless another venue is specifically authorized by law."  Wis. Stat. § 801.50(3)(a).  There is, indeed, a law relevant to this case that can authorize a different venue—it is Wis. Stat. § 227.53(1)(a)3., albeit a different provision from the text discussed above.  This part of the statute says:

> If 2 or more petitions for review of the same decision are filed in different counties, the circuit judge for the county in which a petition for review of the decision was first filed shall determine the venue for judicial review of the decision, and shall order transfer or consolidation where appropriate.

Wis. Stat. § 227.53(1)(a)3.

24

¶34 This provision was operative in the circuit court because Clean Wisconsin and the Cochart Petitioners both filed petitions for judicial review of the same DNR decision, but in different counties. So the statute gives the circuit court the authority to override the plaintiff's designation inasmuch as it specifically instructs the court to "determine the venue for judicial review of the decision." And it grants the court authority to transfer or consolidate the cases to actualize that determination. The court's discretion is broad here——it may transfer one of the cases so they are both pending in the same county; or it may transfer both cases to a third county, and it may consolidate the cases instead of allowing them to proceed as separate matters.

¶35 Here, the circuit court consolidated the Cochart Petitioners' case into Clean Wisconsin's case, and left it venued in Dane County. After consolidation, only the Clean Wisconsin petition remained, although it then included the Cochart Petitioners as parties. See Seventeen Seventy-Six Peachtree Corp. v. Miller, 41 Wis. 2d 410, 414, 164 N.W.2d 278 (1969) (stating that consolidation "contemplates only one action and one set of pleadings after consolidation"); E. Wis. Ry. & Light Co. v. Hackett, 135 Wis. 464, 472-73, 115 N.W. 376 (1908) (same); Harrigan v. Gilchrist, 121 Wis. 127, 309, 99 N.W. 909 (1904) (stating that in consolidating cases, "[n]ecessarily, the first one properly commenced superseded the other"); Eau Claire Fuel & Supply Co. v. Laycock, 92 Wis. 81, 83, 65 N.W. 732 (1896)

(stating that consequent upon an order of consolidation, "[t]he second action, under the circumstances, merged in the first").

¶36 By leaving the Clean Wisconsin petition pending in Dane County, the circuit court determined its venue, but only in the negative sense of not having ousted the designation already made. So the question is whether not disturbing Clean Wisconsin's designation actually negates it. On this point, the structure of Act 61 advances our understanding of its plain meaning. The portion in which we are now interested says: "[A]ll actions in which the sole defendant is the state . . . shall be venued in the county designated by the plaintiff unless another venue is specifically authorized by law." 2011 Wis. Act 61 § 3g; Wis. Stat. § 801.50(3)(a). The sentence speaks of two possible venues. It prescribes the "county designated by the plaintiff" as the general rule, and allows an exception only if there is another venue "specifically authorized by law."

¶37 Because Wis. Stat. § 227.53(1)(a)3. authorizes the circuit court to determine venue, it holds out at least the possibility of "another venue." However, it does not, of its own force, establish "another venue." The phrase "another venue," of course, stands in opposition to the one designated by the plaintiff. That is, if the plaintiff designates Dane County, "another venue" must be any county but that. Here, the circuit court determined that Dane County would continue as the venue for the Clean Wisconsin case. This is not "another venue," but the very same. Although the circuit court could

26

have determined another venue, it did not actually do so. Paragraph 801.50(3)(a) operates not on possibilities, but actualities. If the circuit court had transferred venue to a county different from the one designated by Clean Wisconsin, there would have been "another venue" within the meaning of Wis. Stat. § 801.50(3)(a). Thus, we conclude that "another venue is specifically authorized by law" only when venue is lawfully transferred to a county different from the one designated by the plaintiff. Here, the circuit court did not transfer venue to a county different from the one Clean Wisconsin had designated; the venue remained as designated by Clean Wisconsin. So Dane County cannot be "another venue."

¶38 The respondents came to a different conclusion based, at least in part, on their understanding of the "unless" clause as it existed prior to Act 61. However, their interpretation does not account for the significant change to the statute occasioned by Act 61. Prior to Act 61, the relevant part of Wis. Stat. § 801.50(3) said this: "All actions in which the sole defendant is the state . . . shall be venued in Dane County unless another venue is specifically authorized by law." § 801.50(3) (2009-10). Contrary to the respondents' argument, Act 61 significantly changed the structure of the statute. Before the amendment, the main clause of subsec. 801.50(3) mandated venue in Dane County, while the "unless" clause held out the possibility that a law might make an alternative venue available. Thus, the function of the "unless" clause (pre-Act 61) was to potentially extend venue-eligibility to counties

27

other than Dane. It no longer serves that purpose. By eliminating Dane County as the required venue, Act 61 made all counties potentially venue-eligible. As a result, the "unless" clause no longer serves as a means of extending venue-eligibility as it once did. As discussed above, it now serves only as a mechanism by which to oust the plaintiff's venue designation.[16]

### d. The Cochart Petitioners

¶39 There is still the matter of the Cochart Petitioners. Their petition designated Kewaunee County, but they litigated in Dane County. If their petition had arrived in Dane County Circuit Court via a simple transfer-of-venue order, the exception to the venue-designation rule might have become operative. Dane County is "another venue" in relation to

---

[16] The Court of Appeals essentially argues that we must give the "unless" clause the same meaning it had prior to Act 61. But when the legislature changes the structure of a statute, we must construe it anew. See State ex rel. Dep't of Agric. v. Marriott, 237 Wis. 607, 625, 296 N.W. 622 (1941) ("[A]n amended statute is to be given the meaning that it would have had if it had read from the beginning as amended."); see also Wis. Stat. § 990.001(7) ("A revised statute is to be understood in the same sense as the original unless the change in language indicates a different meaning so clearly as to preclude judicial construction."). The change to the structure and terms of Wis. Stat. § 801.50(3) (2009-10) so clearly changes the statute's meaning (as described, supra) that it is impossible to maintain the pre-Act 61 meaning of the "unless" clause.

The dissent agrees with the Court of Appeals, but neither of them account for the significant structural changes wrought by Act 61. See dissent, ¶¶6-9. Nor do either of them offer any reason we should ignore those changes.

28

Kewaunee County, and if this hypothetical had come to pass, it would have been specifically authorized by law.  An appeal from that case may have engaged Wis. Stat. § 752.21(1), meaning the DNR may not have had its selection of appellate venue; the court of appeals may have been obliged to hear one of the appeals in District IV.  But the circuit court did not simply transfer the Cochart Petitioners' case——it consolidated it with the Clean Wisconsin case.  So there is no longer a Kewaunee County designation to compare against venue in Dane County.  And because the surviving case still bears Clean Wisconsin's designation, that is the point of reference in deciding whether the circuit court determined "another venue" within the meaning of Wis. Stat. § 801.50(3)(a).  It did not.  So we must conclude that Clean Wisconsin's designation remains in effect for this case.

¶40  That brings us back to venue for the appeal.  Because Clean Wisconsin designated the circuit court venue within the meaning of Wis. Stat. § 801.50(3)(a), appellate venue must lie in "a court of appeals district selected by the appellant[,] but the court of appeals district may not be the court of appeals district that contains the court from which the judgment or order is appealed."  Wis. Stat. § 752.21(2).  The DNR selected District II, which is a permissible selection because District IV contains the Dane County Circuit Court.  Consequently, it is the court of appeals' plain duty to hear the DNR's appeal in District II.

29

C.    Inadequate Remedy

¶41 Next, we determine whether an appeal would be an inadequate remedy.  We will not issue a supervisory writ when an appeal provides an adequate remedy.  Kalal, 271 Wis. 2d 633, ¶17; State ex rel. Lynch v. Cty. Ct., Branch III, 82 Wis. 2d 454, 460, 262 N.W.2d 773 (1978) (stating that a party must show that "ordinary remedies, by appeal or otherwise, are inadequate").  Sometimes appellate review in the normal course of events is inadequate for the simple fact that it comes after the proceeding has already occurred:  "The inadequacy of the remedy of appeal may arise from the fact that appeal would come too late for effective redress."  Lynch, 82 Wis. 2d at 461.  And sometimes an appeal is inadequate because even post-trial appellate review is so limited that the error is effectively insulated from correction.  This case implicates both varieties of inadequacy.

¶42 We have previously recognized that trial court venue can present an issue requiring review before entry of final judgment.  The pathway to that review has varied over the years, and has depended largely on what our rules of civil procedure have said at the time.  For example, it was once possible to appeal a venue order before entry of final judgment.[17]  Under

---

[17] W. Bank of Scotland v. Tallman, 15 Wis. 101, 101 (1862) ("It is claimed by the respondents' counsel that the order [denying change of venue] was not appealable.  But we clearly think it is, upon the ground stated in the opinion of Justice Cole in the case of Oatman v. Bond.").

that circumstance, we said mandamus was an inappropriate remedy because we could timely reach the issue via an appeal. State ex rel. Johnson v. Washburn, 22 Wis. 95, 97 (1867) ("[B]ecause an order improperly refusing to change the place of trial is an appealable order, we deny the application for the writ in this case."). But once interlocutory appeals of venue orders were no longer available as a matter of course, we concluded that mandamus could be a proper pathway for addressing improper venue. In State ex rel. Spence v. Dick, 103 Wis. 407, 409, 79 N.W. 421 (1899), we observed that "[u]nder the present statute regulating appeals from orders, however, orders changing the venue are not appealable." Id. (citations omitted). This meant that "the reason of the decision in State ex rel. Johnson v. Washburn disappear[ed], and mandamus [became] an appropriate remedy." Id.; see State ex rel. Arthur v. Proctor, 255 Wis. 355, 357, 38 N.W.2d 505 (1949) ("[B]ecause an order denying a motion for change of venue was nonappealable under the statutes, mandamus was the proper remedy."); State ex rel. T. L. Smith Co. v. Super. Ct. of Dane Cty., 170 Wis. 385, 385, 175 N.W. 927 (1920) (same).

¶43 The lack of an appellate pathway in this case is analogous to Spence. That is to say, our rules of appellate procedure do not give the DNR the right to appeal the Court of Appeals' venue order. Strictly speaking, there is no right of

31

appeal to this court at all.[18]  We are not, primarily, an error-correcting tribunal,[19] and we normally hear only those cases that present something more than just an error of law.  If the DNR must wait for the court of appeals to issue a decision on the merits, its error-correcting recourse would be a petition for review.  The criteria for granting such a petition, however, do not encompass correcting an appellate tribunal's simple error of law.[20]  And even though those criteria do not cabin our discretion, they fairly represent the most common reasons we grant review.  Therefore, a successful petition for review in this case would depend on a serendipitous confluence between (1) the venue error, and (2) a "plus" factor, such as we describe in Wis. Stat. § (Rule) 809.62(1r) (criteria for granting review).

¶44 Because a petition for review in this case would require a "plus" factor just to bring the venue issue before us,

---

[18] "Supreme court review is a matter of judicial discretion, not of right . . . ."  Wis. Stat. § (Rule) 809.62(1r).

[19] The court of appeals' "primary function is error correcting"; "the supreme court's primary function is that of law defining and law development."  Cook v. Cook, 208 Wis. 2d 166, 188-89, 560 N.W.2d 246 (1997).

[20] We generally do not review a case unless it presents a "real and significant question of federal or state constitutional law," or we see a need to "establish[], implement[] or chang[e] a policy within" our authority, or we need to "develop, clarify or harmonize the law," or the court of appeals' decision either conflicts with controlling authority or is in need of re-examination "due to the passage of time or changing circumstances."  Wis. Stat. § (Rule) 809.62(1r).

it is a mechanism too chancy to constitute an adequate remedy. Faced with a similar conundrum, at least one other court came to the same conclusion. In In re Volkswagen of America, Inc., 545 F.3d 304 (5th Cir. 2008), the Fifth Circuit considered whether to issue a writ of mandamus requiring transfer of venue on forum non conveniens grounds. Id. at 308-09. The court noted that interlocutory review of the district court's order was not available, and that a new trial following appeal from the final judgment would be possible only if the appellant could demonstrate it would have prevailed in the proper forum. See id. at 318-19. Consequently, the context of the venue question on post-trial appellate review would effectively shield it from resolution. The court concluded an appeal under those circumstances would be inadequate, and ordered a writ of mandamus requiring transfer of venue. Id.; see In re Lloyd's Register N. Am., Inc., 780 F.3d 283 (5th Cir.), cert. denied sub nom. Pearl Seas Cruises, LLC v. Lloyd's Register N. Am., Inc., 136 S. Ct. 64 (mem.) (2015) (same); In re EMC Corp., 677 F.3d 1351, 1355 (Fed. Cir. 2012) (same); In re Apple, Inc., 602 F.3d 909, 912 (8th Cir. 2010); In re Nat'l Presto Indus., Inc., 347 F.3d 662, 663 (7th Cir. 2003) (applying this analysis under the irreparable harm rubric).

¶45 We conclude that a petition to review the court of appeals' eventual decision on the merits is an inadequate remedy to address the question of appropriate appellate venue. Our review of that question should not depend on the existence of an

33

additional "plus" factor that would support a petition for review.

### D. Irreparable Harm

¶46 Finally, we determine whether the DNR would suffer irreparable harm if this court denies the supervisory writ. Kalal, 271 Wis. 2d 633, ¶17 (stating that a supervisory writ will issue only upon a showing of "grave hardship or irreparable harm" in its absence). We conclude that it would——for largely the same reasons that make a petition for review an inadequate remedy.

¶47 The legislature granted appellants in the DNR's procedural posture the right to select appellate venue. It is nearly tautological to observe that losing a statutorily-granted right is a harm. Losing the right with no means to recover it makes the harm irreparable. As described above, a petition for review is an uncertain and ill-suited vehicle for addressing whether the court of appeals heard a case in the proper district. Because the question would, therefore, be unlikely to receive appellate attention at all, the DNR would be left with no sure means by which to remedy the deprivation of its statutory right. That makes the loss, by definition, irreparable. See, e.g., Proctor, 255 Wis. at 357 (concluding that petition for writ of mandamus is the proper procedure because the venue order is non-appealable); Super. Ct. of Dane Cty., 170 Wis. at 385 (same); Spence, 103 Wis. at 409 (indicating that the denial of an "absolute" right to change of

34

venue in a different county constituted "substantial damage," making mandamus appropriate).

¶48 The dissent would conduct what it characterizes as a "mandatory harmless error analysis," dissent, ¶51, which would deny the appellant its statutorily-granted right unless the choice of venue is outcome-determinative. The dissent says that, because District IV's judges are just as fair as the judges of any other district, the DNR cannot demonstrate the appeal would resolve differently if heard elsewhere. See id., ¶52. So the dissent would make Wis. Stat. § 752.21(2) a dead letter. If an appellant does not have the right to select venue unless it can demonstrate a panel's judges are "unfair," then this is just a species of recusal statute. Functionally, that would mean the choice of venue lies with the court of appeals (as occurred here), not the appellant—an exceedingly odd outcome for a statute that says the exact opposite. But we have no need or occasion to question the fairness of District IV's judges because § 752.21 is a venue selection statute, not a recusal statute. We will not read it out of existence by recasting it as one.

## III. CONCLUSION

¶49 We conclude that the DNR has met the requirements for the issuance of a supervisory writ. We, therefore, grant the petition for a supervisory writ and vacate the August 31, 2016, Court of Appeals order transferring the appeal in this case from District II to District IV. The Court of Appeals shall hear the appeal in District II.

35

*By the Court.*—The petition for a supervisory writ is granted; the rights are declared as stated; and the stay on appeal is lifted.

¶50 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The majority contravenes (1) the court's duty to undertake a mandatory harmless error analysis; (2) the statute's text; (3) the statutory history; (4) the legislative history; and (5) the meaning of "plain legal duty."

¶51 First, the majority does not undertake a mandatory harmless error analysis as required by our case law. See State v. Reyes Fuerte, 2017 WI 104, ¶31-33, 378 Wis. 2d 504, 904 N.W.2d 773 (justifying requiring the application of harmless error analysis to a statutory violation because the harmless error statute predated the statute that was violated).[1]

¶52 No one court of appeals district is more fair than any other, and when the state is the appellant, it does not appear that any one court of appeals district is more convenient than any other. Where, then, is the harm that justifies an expensive appeal in the instant case paid for by taxpayers when District IV is just as fair and arguably more convenient for the DNR than District II?

¶53 This court is barred from picking and choosing when it will engage in a mandatory harmless error analysis and when it will not. The court has explicitly declared that harmless error

---

[1] See also State v. Reyes Fuerte, 2017 WI 104, ¶¶57-58, 378 Wis. 2d 504, 904 N.W.2d 773 (Abrahamson, J., dissenting) ("Apparently, hereafter, every statute enacted and every case decided after 1897 is subject to a mandatory harmless error analysis . . . ."); State v. Harvey, 2002 WI 93, ¶47 n.12, 254 Wis. 2d 442, 647 N.W.2d 189 (citing Wis. Stat. § 805.18(2) and concluding: "The harmless error rule, however, is an injunction on the courts, which, if applicable, the courts are required to address regardless of whether the parties do.").

"is an injunction on the courts, which, if applicable, the courts are required to address"[2] and is mandatory for violations of statutes that were passed after 1897.[3] The majority offers no explanation for failing to engage in a harmless error analysis in the instant case.

¶54 Second, the majority's statutory interpretation is contrary to the statute's text. "When the same term is used throughout a chapter of the statutes, it is a reasonable deduction that the legislature intended that the term possess an identical meaning each time it appears." Bank Mut. v. S.J. Boyer Const., Inc., 2010 WI 74, ¶31, 326 Wis. 2d 521, 785 N.W.2d 462. The phrase "designated by the plaintiff" appears twice in Wis. Stat. § 801.50. In § 801.50(2)(d), the phrase appears in order to indicate that if none of the situations outlined in § 801.50(2)(a)-(c) applies directing venue to a particular county, "venue shall be in any county designated by the plaintiff." In § 801.50(2)(d), the phrase "designated by the plaintiff" clearly contemplates a choice being made by the plaintiff. The phrase should be given the same meaning in § 801.50(2)(d)[4] and § 801.50(3)(a).[5]

---

[2] Harvey, 254 Wis. 2d 442, ¶47 n.12.

[3] Reyes Fuerte, 378 Wis. 2d 504, ¶31-33.

[4] "If the provisions under par. (a) to (c) do not apply, then venue shall be in any county designated by the plaintiff."

[5] "Except as provided in pars. (b) and (c), all actions in which the sole defendant is the state . . . shall be venued in the county designated by the plaintiff unless another venue is specifically authorized by law."

¶55 Third, the majority opinion is contrary to the statutory history of Wis. Stat. § 801.50(3). In 2011, the statute was amended to change the default venue for actions in which the sole defendant is the state from Dane County to the venue "designated by the plaintiff." However, the amended statute retained the language "unless another venue is specifically authorized by law," a phrase that appeared in the prior statute. Wis. Stat. § 801.50(3) (2009-10) ("All actions in which the sole defendant is the state . . . shall be venued in Dane County unless another venue is specifically authorized by law.").

¶56 Prior to the amendment, the phrase "unless another venue is specifically authorized by law" operated to direct Chapter 227 actions in which the state was the sole defendant to be venued in Dane County unless some other statute directed venue to be elsewhere.[6] The majority flips the "unless" clause in Wis. Stat. § 801.50(3)(a) on its head. Now, according to the majority, a plaintiff may designate the venue even if a particular venue is mandated by statute, and the "unless" clause means that there can be a lawful venue change after the case is filed.

¶57 The majority claims that the analysis of the statutory history set forth above ignores "the significant structural

---

[6] For example, Wis. Stat. § 227.53(1)(a)3. provides: "If the petitioner is a resident, the proceedings shall be held in the circuit court for the county where the petitioner resides . . . ."

changes wrought by Act 61." Majority op., ¶38 n.16. The "significant structural changes" are of the court's own making, not the legislature's. Did the legislature intend, by changing "shall be venued in Dane County" to "shall be venued in the county designated by the plaintiff" in Wis. Stat. § 801.50(3), to establish a framework wherein a plaintiff will practically never have a choice of venue,[7] but appellants will almost always have a choice of venue? This result appears absurd.

¶58 It is much more likely that the legislature did not intend to create such a lopsided framework and instead intended to create a framework wherein an appellant's ability to choose the venue is necessarily tied to the plaintiff's having a choice of venue at the trial court level. Interpreting Wis. Stat. § 801.50(3)(a) to entail a choice of venue by a plaintiff accomplishes two objectives: First, it avoids the absurd framework that the court now establishes. Second, it does not disturb the meaning of the "unless" clause, which was not altered by the legislature's amendment.

¶59 Fourth, the majority opinion is contrary to the statute's legislative history. The Legislative Reference Bureau's analysis of 2011 S.B. 117, a document distributed to all legislators, explained that the bill "permitted" plaintiffs to designate the county within which to bring an action. The

---

[7] A review of the Wisconsin Statutes reveals that in many situations a statute directs that venue be in a particular county. See, e.g., Wis. Stat. §§ 801.50(2), 801.50(3)(b), 801.50(3)(c), 227.40(1).

4

use of the word "permit" is telling. The word "permits" contemplates a choice. How can the Administrative Petitioners be said to have been "permitted" to designate venue when by operation of Wis. Stat. § 227.53(1)(a)3., the Administrative Petitioners had but one choice——file their respective petitions in the county in which they reside? The legislative history reflects a reciprocity of choice between a plaintiff and an appellant such that only if a plaintiff is allowed to choose venue in the circuit court will an appellant be allowed to choose venue on appeal.

¶60 The Fiscal Estimate Narrative for 2011 S.B. 117, another document circulated to all lawmakers, explicitly described the operation of the bill as allowing plaintiffs to choose their venue under the statute.

¶61 The majority faults a court's reliance on documents such as the Legislative Reference Bureau's analysis of the bill and the Fiscal Estimate Narrative, suggesting that nobody has the slightest idea what impact these documents had on individual legislators and casting doubt on whether anyone reads the documents.

¶62 Co-equal branches of government owe respect to each other.[8] I do not join the majority in belittling the legislative

---

[8] Courts presume that the legislature respects the work of the courts. Thus, this court presumes that the legislature is aware of existing case law when it passes legislation, Czapinski v. St. Francis Hosp., Inc., 2000 WI 80, ¶22, 236 Wis. 2d 316, 613 N.W.2d 120 ("[T]he legislature is presumed to act with knowledge of the existing case law.").

(continued)

branch, disparagingly portraying legislators as having little if any knowledge about the laws they enact.

¶63 At a minimum, a court should presume that legislators are aware of the explanatory material the Legislative Reference Bureau must set forth in each bill.[9] The legislature requires the Legislative Reference Bureau to draft the language of each and every bill to be introduced in the legislature and generate explanatory material for each bill in plain English, explaining the bill's impact and effect.[10] Although explanatory material in a bill is not dispositive in a court's interpretation of a statute, the explanatory material required to be available to all legislators has been relied upon by this court in statutory interpretation. The interpretation of a statute in the

---

This court respects the work of the legislature. A judicial construction of a statute is entitled to more weight when the legislature has not acted to change that judicial construction, Estate of Miller v. Storey, 2017 WI 99, ¶52, 378 Wis. 2d 358, 903 N.W.2d 759 (upholding a judicial interpretation of a statute because "the legislature had ample opportunity to act on or repeal the judicial interpretation of [a statute] . . . [b]ut the legislature did not act on or repeal the interpreted language").

It is, of course, one of the judicial branch's legal fictions to declare that the legislature is aware of existing case law when enacting legislation. The court itself may not always be aware of its own existing case law when it decides a case.

[9] The Legislative Reference Bureau is required to prepare Prefatory Notes (Analysis to Bills) for each bill. Wis. Stat. § 13.92(1)(b)2. For a description of the work of the Bureau, see Wisconsin Legislative Reference Bureau, Bill Drafting Manual 2017-2018, ch. 4.

[10] Wis. Stat. §§ 13.92(1)(b)1., 13.92(1)(b)2.

6

explanatory note prepared by the legislative staff that drafted the text of the statute should not, in every instance, be totally ignored by a court.[11]

¶64 Fifth and finally, the majority errs in its discussion of "plain legal duty." Quoting State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶22, 271 Wis. 2d 633, 681 N.W.2d 110, the majority acknowledges that "[a] plain duty is one that is 'clear and unequivocal and, under the facts, the responsibility to act [is] imperative.'" Majority op., ¶11. The majority then concludes that "clear and unequivocal" and "the responsibility to act is imperative" do "not require the duty to be settled or obvious," quoting Madison Metropolitan School District v. Circuit Court for Dane County, 2011 WI 72, ¶84, 336 Wis. 2d 95, 800 N.W.2d 442.[12] Majority op., ¶11. The majority and Madison Metropolitan School District's defining of "plain duty" in this way is not supported by the case law. In State ex rel. Two Unnamed Petitioners v. Peterson, the court reaffirmed that the obligation of a judge to correctly apply the law "is not the type of plain legal duty contemplated by the supervisory writ procedure." 2015 WI 85, ¶81, 363 Wis. 2d 1,

---

[11] See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶69, 271 Wis. 2d 633, 681 N.W.2d 110 (Abrahamson, J., concurring) (positing a non-exhaustive list of various forms of history that have been helpful to courts in interpreting statutes).

[12] "'[C]lear and unequivocal' does not require the duty to be settled or obvious. There may be a plain duty even when it involves 'a novel question of law requiring harmonization of several statutory provisions.'" Majority op., ¶11 (citation omitted).

7

866 N.W.2d 165. The Two Unnamed Petitioners court declared that for a duty to be plain, clear, and unequivocal, it must also be settled and obvious. Id., ¶81 (quoting Kalal, 271 Wis. 2d 633, ¶24). To hold otherwise "would extend supervisory jurisdiction to a virtually unlimited range of decisions involving the finding of facts and application of law." Kalal, 271 Wis. 2d 633, ¶24. How can the majority square this language from Kalal, which was reaffirmed in Two Unnamed Petitioners, with Madison Metropolitan School District? I do not think it can.

¶65 For these reasons, I dissent.

¶66 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissenting opinion.