In the

# United States Court of Appeals
## For the Seventh Circuit

—————————

No. 07-1402

AUX SABLE LIQUID PRODUCTS, a Delaware
Limited Liability Company,

*Plaintiff-Appellee,*

*v.*

KENNETH MURPHY, Individually and as
Monee Township Highway Commissioner,
MONEE TOWNSHIP, and MONEE TOWNSHIP
HIGHWAY DEPARTMENT,

*Defendants-Appellants.*

—————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 1227—**Charles P. Kocoras**, *Judge.*

—————————

ARGUED DECEMBER 5, 2007—DECIDED MAY 19, 2008

—————————

Before FLAUM, EVANS, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* This case concerns to what degree the Surface Transportation Assistance Act ("STAA"), which governs access to and from the federal Interstate system, preempts local weight restrictions on bordering roads. Since 2001, loaded trucks leaving a propane loading facility ("the Terminal") owned by Plaintiff Aux

Sable Liquid Products reached Interstate 57 ("I-57") via Ridgeland Avenue in Monee Township, Illinois. In 2006, the Monee Township Highway Commissioner, in order to protect Ridgeland Avenue from damage, limited the truck weight on the road to 14 tons, a weight less than that of an unloaded propane truck. Aux Sable then brought suit seeking injunctive relief under the STAA, as codified at 49 U.S.C. § 31114, and under the Illinois Vehicle Code, 625 ILL. COMP. STAT. 5/15 *et seq.*, against Defendants Kenneth Murphy (the Monee Township Highway Commissioner), Monee Township, and the Monee Township Highway Department. Aux Sable also claimed that Defendants should be estopped from changing the weight limits on the road. The district court granted Aux Sable's motion for a preliminary injunction and later granted Aux Sable's motion for summary judgment, finding that the STAA preempted the local weight restrictions placed on Ridgeland Avenue. For the reasons discussed below, we affirm.

## I. Background

Plaintiff Aux Sable Liquid Products is the beneficial owner of a propane loading terminal located at the southeast corner of West Steger Road and South Ridgeland Avenue in Monee Township, Will County, Illinois. *See* Mapquest, Maps, http://www.mapquest.com/maps/ 23313+S+Ridgeland+Ave+Monee+IL+60449-9293/ (last visited April 28, 2008). The Terminal was constructed in 2000 and began operating in October 2001, and from the outset, Aux Sable devoted attention to how the propane trucks coming to and from the Terminal would access I-57, which runs north and south just east of the Terminal. One route from the Terminal to I-57 is to exit the Terminal onto

Steger Road and reach I-57 via the Sauk Trail Road interchange north of the Terminal. A slightly longer route, but still within five miles of I-57, is to leave the Terminal on Ridgeland Avenue proceeding south, entering I-57 on the Monee Manhattan Road interchange. Which route the propane trucks would take, however, depended upon weight restrictions on the roads, since unloaded propane trucks weigh approximately 39,000 pounds, and when fully loaded, can weigh up to 80,000 pounds, the maximum vehicle gross weight permitted on the Interstate system. 23 C.F.R. § 658.17(b). Interstate access via the first route was restricted due to weight limits enforced by Cook County on Steger Road, where loads up to 80,000 were not permitted unless each truck applied for and received a permit for each trip. With respect to the second route, Aux Sable maintains that in June 2000, then-Monee Township Highway Commissioner Wayne Stessen signed a Resolution permitting trucks weighing up to 80,000 pounds to use Ridgeland Avenue. Although Defendants contest the validity of this Resolution, Aux Sable claims that the Terminal was designed with the understanding that unloaded trucks could enter from Steger Road while loaded trucks could exit onto Ridgeland Avenue. Once the Terminal began operating in October 2001, this is in fact what occurred, with loaded trucks leaving the Terminal onto Ridgeland Avenue and entering I-57 via the Monee Manhattan Road interchange.

Truck traffic between the Terminal and I-57 continued in this manner until Ken Murphy became the new Monee Township Highway Commissioner in 2005. In the fall of that year, Murphy informed Aux Sable that he intended to restrict truck traffic on Ridgeland Avenue due to damage the trucks were causing to the road. Then,

in February 2006, signs that had been posted in 2004 designating Ridgeland Avenue as a Class II truck route (which under 625 ILL. COMP. STAT. 5/15-111(f) permits loads up to 80,000 pounds) were replaced with signs limiting the truck weight on Ridgeland Avenue to 14 tons. On March 1, Murphy himself instructed the driver of a propane truck on Ridgeland Avenue of the weight limit on the road.

These events spurred Aux Sable to take legal action. On March 3, 2006, Aux Sable brought suit in the Circuit Court for the Twelfth Judicial Circuit, Will County, Illinois. The suit, which sought injunctive relief, claimed that the weight restriction on Ridgeland Avenue was preempted by the STAA, 49 U.S.C. § 31114, and violated the Illinois Vehicle Code, 625 ILL. COMP. STAT. 5/15 *et seq.* Aux Sable also claimed that Defendants should be estopped from changing the weight limits on Ridgeland Avenue since the Terminal was allegedly constructed with the understanding that loaded trucks would be able to exit onto that road. Four days later, Defendants Kenneth Murphy, Monee Township, and the Monee Township Highway Department removed the case to the Northern District of Illinois under 28 U.S.C. § 1441, since the preemption issue concerning the STAA gave rise to federal question jurisdiction pursuant to 28 U.S.C. § 1331. The district court then granted Aux Sable's motion for a preliminary injunction on March 14, and the parties subsequently filed cross-motions for summary judgment. On December 20, 2006, the district court ruled on these motions, finding that the weight restriction was preempted by the STAA. Based on this finding, the district court enjoined Defendants from prohibiting the Terminal's truck traffic and found it unnecessary to address Aux Sable's estoppel claim or argument that Defendants had

violated the Illinois Vehicle Code. Defendants then brought a motion to amend the judgment under Fed. R. Civ. P. 59(e), arguing that the district court's ruling made the State of Illinois a necessary party to the suit. The district court denied this motion, after which Defendants appealed the district court's summary judgment decision to this Court.

## II. Analysis

On appeal, Defendants challenge the district court's grant of summary judgment for Aux Sable on the preemption issue, as well as the district court's denial of summary judgment in Defendants' favor with respect to Aux Sable's claim under the Illinois Vehicle Code and Aux Sable's estoppel argument. This Court reviews a district court's ruling on cross-motions for summary judgment de novo. *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561 (7th Cir. 2002). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) (quoting *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004)). Thus, with respect to the preemption claim, all inferences will be construed in favor of Defendants, while for the other two claims, all inferences will be drawn in favor of Aux Sable.

We first turn to the question of whether the local weight restriction on Ridgeland Avenue is preempted by the STAA pursuant to the Supremacy Clause of Article IV of the Constitution. Under the Supremacy Clause, "state laws that 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (quoting *Gibbons v. Ogden*, 22 U.S. 1 (1824)). The federal law at issue in this case, the STAA, governs, among other things, access to and from the national Interstate system. 49 U.S.C. § 31114. The relevant text of the statute provides:

> (a) Prohibition on denying access. A State may not enact or enforce a law denying to a commercial motor vehicle subject to this subchapter [49 U.S.C.S. §§ 31111 et seq.] or subchapter I of this chapter [49 U.S.C.S. §§ 31101 et seq.] reasonable access between—
>
>> (1) the Dwight D. Eisenhower System of Interstate and Defense Highways . . .; and
>>
>> (2) terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers, motor carriers of passengers, or any truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that generally operates as part of a vehicle combination described in section 31111(c) of this title [49 U.S.C.S. § 31111(c)].
>
> (b) Exception. This section does not prevent a State or local government from imposing reasonable restrictions, based on safety considerations, on a truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that

> generally operates as part of a vehicle combination described in section 31111(c) of this title [49 U.S.C.S. § 31111(c)].

*Id.* The law thus guarantees commercial motor vehicles[1] "reasonable access," free from State interference, between the Interstate and terminals,[2] although state and local governments can place "reasonable restrictions, based on safety considerations," on certain truck tractor-semi-trailer combinations. 49 U.S.C. § 31114. The question then is whether § 31114, which cabins the degree and manner in which state and local governments may re-strict commercial vehicles' access to and from the Inter-state, preempts Monee Township's weight restriction on Ridgeland Avenue.

Preemption can take on three different forms: express preemption, field preemption, and conflict preemption. *Hoagland v. Town of Clear Lake*, 415 F.3d 693, 696 (7th Cir. 2005) (citing *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002)). "Express preemption occurs when a fed-eral statute explicitly states that it overrides state or local law." *Id.* As for field preemption, it exists "when federal law so thoroughly 'occupies a legislative field' as to make it reasonable to infer that Congress left no room for the

---

[1] It is undisputed that the propane trucks traveling to and from the Terminal are "commercial motor vehicles" under § 31114, *see also* 23 C.F.R. § 658.5 (defining "commercial motor vehicle")

[2] Defendants do not contest that Aux Sable's propane loading facility qualifies as a "terminal" under § 31114(a)(2). *See* 23 C.F.R. § 658.5 (defining "Terminal" as including "any location where . . . [f]reight either originates, terminates, or is handled in the transportation process").

states to act." *Id.* (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)). The district court, however, limited its finding of preemption to the third type, conflict preemption, which "exists if it would be impossible for a party to comply with both local and federal requirements or where local law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)). We similarly focus our attention on this third form of preemption, since Aux Sable does not argue on appeal that express or field preemption applies.[3]

To determine whether state and federal law are in conflict, it is necessary to "examin[e] the federal statute as a whole and identify[ ] its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363,

---

[3] We observe that express preemption is present in the STAA, since the very language of the Act provides that "[a] State may not enact or enforce a law denying to a commercial motor vehicle . . . reasonable access between" the Interstate and certain specified destinations. 49 U.S.C. § 31114. The district court, however, based its holding on conflict preemption in order to avoid determining whether the express limits placed upon "[a] State" in § 31114 similarly extend to local governments such as Monee Township. We similarly decline to decide whether the language in § 31114 expressly preempts local governments, rather than just "[a] State," from denying "reasonable access." Instead, we rest our analysis on conflict preemption principles. *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 65 (2002) ("Congress' inclusion of an express pre-emption clause 'does not bar the ordinary working of conflict pre-emption principles'") (quoting *Geier v. American Honda Motor Co.*, 529 U.S. 861, 869 (2000)).

373 (2000). This analysis requires that we "consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." *Frank Bros. v. Wis. Dep't of Transp.*, 409 F.3d 880, 894 (7th Cir. 2005) (quoting *Mite Corp. v. Dixon*, 633 F.2d 486, 493 (7th Cir. 1980)). Furthermore, "mere differences between state and federal regulation of the same subject are not conclusive of preemption . . . the crucial inquiry is whether [state law] differs from [federal law] in such a way that achievement of the congressional objective . . . is frustrated." *Id.* (quoting *Mite Corp.*, 633 F.2d at 493).

Under this analytical framework, it is first necessary to establish the congressional objective for the STAA, specifically § 31114. The parties are strongly divided on this issue. Aux Sable draws upon prior cases from other jurisdictions for its position that "it is manifest that the STAA reflects a congressional interest in establishing uniform regulations governing the size, weight, and arrangements of trucks used in interstate commerce." *United States v. Connecticut*, 566 F. Supp. 571, 576 (D. Conn. 1983). Furthermore, Aux Sable maintains that this congressional interest in uniformity reaches beyond regulating the Interstate itself, and also extends to local roads that may be miles away, for the purpose of guaranteeing reasonable access to the Interstate and other roads part of the federal National Network. *See* 23 C.F.R. § 658.19; *see also New Hampshire Motor Transp. Ass'n v. Town of Plaistow*, 67 F.3d 326, 330 (1st Cir. 1995) ("guarantee of reasonable access [under 49 U.S.C. § 31114] thus has a formidable reach, extending to local regulatory measures that operate miles away from any interstate or national network highway."). Aux Sable does recognize that states still have some regulatory authority in this area,

but argues that this power is limited in that states are mandated to provide reasonable access, and that any exercise of state authority must be done "reasonably and in the interest of public safety." *Consolidated Freightways Corp. of Delaware v. Larson*, 647 F. Supp. 1479, 1484 (M.D. Pa. 1986) *rev'd on other grounds,* 827 F.2d 916 ((3d Cir. 1987).

Defendants offer a different understanding of Congress's purpose in enacting the STAA. They contend that contrary to Aux Sable's claims, Congress was not concerned with uniformity, but rather, Congress aimed to ensure commercial vehicles' access to the Interstate system, while permitting states to determine the circumstances under which such access would be available. In reaching this conclusion, Defendants rely heavily on *Consolidated Freightways Corp. of Delaware v. Larson*, a case out of the Middle District of Pennsylvania, and that decision's review of the STAA's legislative history. 647 F. Supp. 1479 (M.D. Pa. 1986). In *Consolidated Freightways,* the court emphasized that when Congress amended the Act in 1984, it declined to more specifically define "reasonable access," despite Congress's awareness of the lack of uniformity from state to state with respect to the degree of access being provided to the National Network. *Id.* at 1483-84 (citing Senate Committee Report of the Tandem Truck Safety Act of 1984, S. REP. NO. 505, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.C.C.A.N. 4769). Defendants, mirroring the district court's reasoning in *Consolidated Freightways,* argue that Congress's failure to modify the definition of "reasonable access" when the law was amended, given Congress's awareness of states' variations in interpreting this provision, reflects a congressional intent that states be permitted to define "reasonable access" on their own. *Id.* at 1484. While Defendants

do recognize that federal regulations provide that "[n]o State may enact or enforce any law denying access within 1 road-mile from the National Network using the most reasonable and practicable route available except for specific safety reasons on individual routes," 23 C.F.R. § 658.19(d), Defendants argue that Congress intended that states themselves determine whether other restrictions not covered by this particular regulation still provide for "reasonable access" to the National Network.

These divergent interpretations of Congress's objective regarding the STAA lead to different conclusions as to whether the local Monee Township ordinance over Ridgeland Avenue is preempted. According to Aux Sable, because of Cook County's preexisting weight restriction on Steger Road, Monee Township's new weight restriction on Ridgeland Avenue does not just deny "reasonable access" to the Interstate, but in fact denies *all* access to I-57 for fully loaded propane trucks leaving the Terminal. Furthermore, Aux Sable argues that because the local weight restriction was only imposed to protect Ridgeland Avenue, the local ordinance cannot be construed as a reasonable restrictions based upon safety considerations. Defendants, in contrast, argue that because Ridgeland Avenue is not subject to the regulation in 23 C.F.R. § 658.19(d), Congress intended that the State of Illinois have the authority to determine what constitutes "reasonable access" to the Interstate. Accordingly, Defendants contend that so long as the weight restriction on Ridgeland Avenue comports with the Illinois Vehicle Code, no conflict between the local ordinance and the STAA can be said to exist.

We are unwilling to accept Defendants' argument that Congress intended that each state be permitted to deter-

mine for itself how "reasonable access" in § 31114(a) is to be defined. If states were truly left to define this term on their own, the express preemption language in § 31114(a) would be rendered effectively meaningless, since states would be able to define "reasonable access" so as to allow state and local authorities to severely impede commercial motor vehicles' access to the Interstate. Indeed, *Consolidated Freightways*, the case which Defendants rely upon so heavily, does not in the end adopt the view advanced by Defendants. Although the opinion in *Consolidated Freightways* does state that Congress "left it up to the states themselves to determine what is reasonable," the opinion also provides that this authority came with "the caveats that *reasonable* access *must* be available, and that states may only exercise their police powers reasonably and in the interest of public safety," 647 F.3d at 1484 (emphasis in original)—caveats that Defendants gloss over. Moreover, the court in *Consolidated Freightways* clearly rejected any notion that states, aside from the restriction in 23 C.F.R. § 658.19(d), are unchecked in their ability to define "reasonable access," since the court ultimately found that the Pennsylvania access route approval scheme at issue in the case was preempted by the STAA "to the extent it denie[d] reasonable access" between the Interstate and the locations discussed in § 31114(a)(2) (then codified at 49 U.S.C. § 2312). *Id.* at 1494-95.

Instead, we agree with the district court that Congress's primary objective in passing the STAA was to create uniform standards for commercial motor vehicles utilizing the Interstate and other federal highways. Congress also recognized that this goal would be frustrated if commercial motor vehicles validly permitted on the

Interstate were barred by state and local governments from entering the Interstate on local roads or exiting the Interstate for purposes of refueling or delivering goods. Thus, § 31114 prohibits states from denying commercial motor vehicles "reasonable access" to and from the Interstate. Congress's decision not to define "reasonable access" more specifically does not mean that states are permitted to define the term however they see fit. Rather, this broad language can be viewed as reflecting a recognition on Congress's part that the manner and degree of access to and from the Interstate necessary to protect Congress's overarching goal of uniformity for commercial motor vehicles utilizing the Interstate will vary across the country depending on factors such as whether the Interstate is cutting across rural or metro areas, traffic density on the road, and other considerations. *See New Hampshire Motor Transp. Ass'n.,* 67 F.3d at 330 (opining that it would be within a state or local government's discretion, in accord with the "reasonable access" provision under § 31114(a), to impose "a restriction that routed heavy traffic on a detour of a few miles to assure quiet in a hospital zone"). Under this framework, states are still free to exercise their police powers over state highways and local roads, so long as these regulations do not impede "reasonable access" for commercial motor vehicles traveling between the Interstate and places such as terminals.[4]

---

[4] We note that some courts have held that any state or local restrictions on access to and from the Interstate must be based on safety concerns. *See A.B.F. Freight System, Inc. v. Suthard*, 681 F. Supp. 334, 341 (E.D. Va. 1988); *see also New York State Motor Truck Ass'n v. City of New York*, 654 F. Supp. 1521

(continued...)

We next turn to whether this congressional objective is frustrated by Monee Township's weight restriction on Ridgeland Avenue. When viewed on its own, it is difficult to see how Ridgeland Avenue's weight restriction could be said to deny reasonable access between the Terminal and the Interstate, since the Terminal also abuts Steger Road, thus providing propane trucks with another means of accessing I-57. The STAA, after all, does not prohibit states from denying *any* form of access to and from the Interstate, but rather, preemption only occurs

---

[4]  (...continued)
(S.D. N.Y. 1987), *aff'd* 833 F.2d 430 (2d Cir. 1987); *Consolidated Freightways Corp. of Delaware*, 647 F. Supp. at 1483-84; *see also Keck v. Commonwealth ex rel. Golden*, 998 S.W.2d 13, 16-18 (Ky. Ct. App. 1999). The First Circuit, however, is the only circuit court to have fully addressed this issue, and we agree with its determination that under § 31114(a), states may limit access to the National Network for reasons other than safety. *New Hampshire Motor Transp. Ass'n*, 67 F.3d at 329-31. As discussed by the First Circuit, there is no reason to think that § 31114(b), which provides an exception from the "reasonable access" provision in § 31114(a) for reasonable restrictions on certain truck tractor-semitrailer combinations imposed by state or local governments for safety reasons, serves to limit *any* state restriction to one based on safety considerations. *Id.* at 330. Instead, a more proper reading of § 31114(a) is that states may exercise their police powers for any number of reasons, so long as reasonable access is provided. Although the federal regulations provide an exception in that "access within 1 road-mile from the National Network must us[e] the *most reasonable* and practicable route available *except for specific safety reasons* on individual routes," 23 C.F.R. § 658.19(d) (emphasis added), these extra qualifications do not apply beyond the 1 road-mile mark.

when *reasonable* access is denied. Analysis for conflict preemption, however, requires that we look at the Ridgeland Avenue weight restriction and the STAA *as applied*, and here, Cook County has already refused to permit fully loaded propane trucks weighing 80,000 pounds to access I-57 via Steger Road. Thus, the subsequent weight restriction on Ridgeland Avenue does not merely deny one method of access, but in effect denies all methods of access to the Interstate from the Terminal for fully loaded propane trucks. Under any calculus, the denial of *all* access cannot constitute *reasonable* access. Accordingly, as applied, Monee Township's weight restriction on Ridgeland Avenue conflicts with § 31114(a) and is thus preempted by the STAA.

In reaching this holding, we offer no opinion as to whether the same outcome would occur if the weight restriction on Ridgeland Avenue were imposed due to safety considerations, rather than solely for the protection of the road. *See supra* note 4. Additionally, because we have found Monee Township's weight restriction on Ridgeland Avenue to be preempted by the STAA, there is no need for this Court to address whether the road ordinance is valid under the Illinois Vehicle Code or whether Defendants should be estopped from enforcing the weight restriction.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for Plaintiff and denial of Defendants' cross-motion for summary judgment.