# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2017AP2525 |

| | |
|---|---|
| COMPLETE TITLE: | Town Of Delafield, <br>       Plaintiff-Appellant, <br>     v. <br> Central Transport Kriewaldt, <br>       Defendant-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 388 Wis. 2d 179,932 N.W.2d 423
PDC No:2019 WI App 35 - Published

| | |
|---|---|
| OPINION FILED: | June 26, 2020 |
| SUBMITTED ON BRIEFS: | March 27, 2020 |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Waukesha |
|   JUDGE: | Michael J. Aprahamian |

JUSTICES:
HAGEDORN, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ANN WALSH BRADLEY, ZIEGLER, and DALLETT, JJ., joined. KELLY, J., filed a concurring opinion, in which REBECCA GRASSL BRADLEY, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Pamela M. Schmidt, Michael K. Roberts,* and *Scopelitis, Garvin, Light, Hanson & Feary, P.C.*, Milwaukee.

For the plaintiff-appellant, there was a brief filed by *Kimberly M. Kershek* and *Law Office of Kimberly Kershek*, Delafield.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP2525
(L.C. No. 2017CV859)

STATE OF WISCONSIN : IN SUPREME COURT

**Town of Delafield,**

      **Plaintiff-Appellant,**

  **v.**

**Central Transport Kriewaldt,**

      **Defendant-Respondent-Petitioner.**

**FILED**

**JUN 26, 2020**

Sheila T. Reiff
Clerk of Supreme Court

HAGEDORN, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ANN WALSH BRADLEY, ZIEGLER, and DALLET, JJ., joined. KELLY, J., filed a concurring opinion, in which REBECCA GRASSL BRADLEY, J., joined.

REVIEW of a decision of the Court of Appeals. *Affirmed and cause remanded.*

¶1 BRIAN HAGEDORN, J. When spring finally arrives in Wisconsin, and roadways begin to thaw from the long winter, many municipalities impose weight limitations on certain roads especially vulnerable to deterioration during this time. The Town of Delafield did just that in March 2016. However, the federal Surface Transport and Assistance Act (STAA), along with

related federal regulations, limits how states may restrict road access between interstate highways and certain destinations. This case arose when Central Transport Kriewaldt received a citation for operating a tractor-trailer in violation of the Town's seasonal weight limitation authorized by its ordinance. Central Transport contested the citation on the grounds that the limitation was preempted, and therefore disallowed, by the STAA.

¶2 We conclude that the STAA's reach in this case mandates only reasonable access. The Town's limitation did not need to be grounded solely in safety considerations, as Central Transport maintains, so long as reasonable access was provided. The record in this case reflects that a seasonal weight limitation is a normal restriction transport companies would be aware of, that adequate notice of the restriction was provided, and that a permit to travel the road was readily available. Put together, these facts show reasonable access was provided, and the Town's seasonal weight limitation was not preempted by the STAA.

I. LEGAL PRINCIPLES

¶3 In order to understand Central Transport's arguments, we need to lay some groundwork regarding preemption generally, followed by an examination of what the STAA and related federal regulations command. Once we establish what federal law requires, we compare that to the Town's implementation and enforcement of its ordinance here.

2

¶4 Preemption presents a question of law we review de novo. Partenfelder v. Rhode, 2014 WI 80, ¶25, 356 Wis. 2d 492, 850 N.W.2d 896. We conduct this analysis accepting the circuit court's factual findings unless they are clearly erroneous. Wis. Stat. § 805.17(2) (2017-18).[1]

## A. Preemption Generally

¶5 The Supremacy Clause of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Therefore, "state law that conflicts with federal law is 'without effect'"; it is preempted. Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992) (quoted source omitted).

¶6 Preemption, however, is disfavored "in the absence of persuasive reasons——either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317 (1981) (quoted source omitted). This presumption against preemption is particularly strong when dealing with the historic police powers of the state. Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008). Unless it is the "clear and manifest purpose of Congress," we assume these traditional areas of state regulation are not

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version.

superseded by federal law. Id. Laws purporting to preempt state police power regulations are therefore given a "narrow reading." Cipollone, 505 U.S. at 518.

¶7 The preemptive effect of any given federal law is guided by Congress's purpose. Altria Grp., Inc., 555 U.S. at 76. And that purpose is discerned through the text, aims, and structure of the federal enactment. Id. Sometimes Congress sets forth its preemptive purpose in the text of a law itself (express preemption). Id. Preemptive intent may also be implied when the federal legislation occupies the legislative field (field preemption) or results in an actual conflict with state law (conflict preemption). Id. at 76-77.

¶8 Central Transport argues that express preemption applies here. And in fact, § 31114(a) of the STAA expressly provides: "A State may not enact or enforce a law denying . . . reasonable access between" certain roads and destinations. 49 U.S.C. § 31114(a) (2012) (emphasis added). This is an express preemption clause. But even when Congress expressly preempts state law, "it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." Altria Grp., Inc., 555 U.S. at 76. The relevant question here is what exactly this "reasonable access" prohibition means and what it applies to. As discussed more fully below, Central Transport argues that any restriction on access must be based on safety considerations, and that the Town's seasonal weight limitation

4

is expressly preempted because protecting the roads during the spring thaw is not a safety-based regulation.

¶9  Central Transport argues in the alternative that the STAA and related regulations indirectly preempt the Town's enforcement of a seasonal weight limitation because they actually conflict.  That is, even if a seasonal weight limitation is not expressly preempted, the Town's implementation and enforcement of that limitation runs contrary to the reasonable access federal law demands.  Conflict preemption occurs "when compliance with both the federal and state laws is a physical impossibility or when a state law is a barrier to the accomplishment and execution of Congress['s] objectives and purposes."  Hazelton v. State Pers. Comm'n, 178 Wis. 2d 776, 787, 505 N.W.2d 793 (Ct. App. 1993).

B.  The STAA and Accompanying Federal Regulations

¶10 The portion of the STAA that requires states to provide reasonable access to commercial motor vehicles is found in 49 U.S.C. § 31114.  Subsection (a) provides that a state "may not enact or enforce a law denying to a commercial motor vehicle subject to this subchapter or subchapter I of this chapter reasonable access between" the interstate highway system as described in § 31114(a)(1)[2] and certain locations described in

_____

[2] The specifically covered interstate highways are defined as:  "the Dwight D. Eisenhower System of Interstate and Defense Highways (except a segment exempted under section 31111(f) or 31113(e) of this title) and other qualifying Federal-aid Primary System highways designated by the Secretary of Transportation." 49 U.S.C. § 31114(a)(1).

5

§ 31114(a)(2) (and discussed further below). § 31114(a). This requires some unpacking.

¶11 Section 31114(a) sets the general legal standard by prohibiting states from denying what the law calls "reasonable access." The prohibition applies "to a commercial motor vehicle subject to this subchapter or subchapter I of this chapter." Id. And subchapter I defines a "commercial motor vehicle" in part as "a self-propelled or towed vehicle used on the highways in commerce principally to transport passengers or cargo, if the vehicle——(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater." 49 U.S.C. § 31101(1).[3] The tractor-trailer in this case fits this definition; it was used in commerce to transport cargo and met the weight requirement.

---

[3] The full definition of a "commercial motor vehicle" is:

a self-propelled or towed vehicle used on the highways in commerce principally to transport passengers or cargo, if the vehicle——

(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;

(B) is designed to transport more than 10 passengers including the driver; or

(C) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103.

49 U.S.C. § 31101(1).

¶12 Section 31114(a)(2) details the potential destinations from the highway for which states must maintain reasonable access:

> terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers, motor carriers of passengers, any towaway trailer transporter combination (as defined in section 31111(a)), or any truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that generally operates as part of a vehicle combination described in section 31111(c) of this title.

49 U.S.C. § 31114(a)(2). Although its grammatical clarity will not win any awards, the sentence structure and punctuation[4] suggest three separate categories of destinations:

- terminals;

- facilities for food, fuel, repairs, and rest; and

- points of loading and unloading for four specific types of carriers:

  o household goods carriers,

  o motor carriers of passengers,

  o any towaway trailer transporter combination (as defined in § 31111(a)), or

  o any truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that generally operates as

---

[4] See Flug v. LIRC, 2017 WI 72, ¶32, 376 Wis. 2d 571, 898 N.W.2d 91 (relying on the "rules of grammar" to interpret a statute); State v. Holcomb, 2016 WI App 70, ¶¶11-12, 371 Wis. 2d 647, 886 N.W.2d 100 (explaining statutory structure and punctuation are important in statutory interpretation).

part of a vehicle combination described in § 31111(c).

¶13 This reading is confirmed by the federal regulation tied to this provision, which stands as a near word-for-word copy of the statutory language. The regulation begins, "No State may enact or enforce any law denying reasonable access to vehicles with dimensions authorized by the STAA between the [national highway network] and terminals and facilities for food, fuel, repairs, and rest." 23 C.F.R. § 658.19(a) (2018). The conjunction "and" separates and therefore categorizes terminals on the one hand, and facilities for food, fuel, repairs, and rest on the other hand.[5] Notably, a period follows, and a new sentence begins:

> In addition, no State may enact or enforce any law denying reasonable access between the [national highway network] and points of loading and unloading to household goods carriers, motor carriers of passengers, and any truck tractor-semitrailer combination in which the semitrailer has a length not to exceed 28 feet (28.5 feet where allowed pursuant to § 658.13(b)(5) of this part) and which generally operates as part of a vehicle combination described in §§ 658.13(b)(5) and 658.15(a) of this part.

Id. This confirms that the last category of destinations, including its specific application to certain truck tractor-semitrailer combinations, is separate and apart from the other categories of destinations: terminals and facilities for food, fuel, repairs, and rest.

---

[5] See State v. Arberry, 2018 WI 7, ¶19, 379 Wis. 2d 254, 905 N.W.2d 832 (explaining "[w]ords are to be given the meaning that proper grammar and usage would assign them" (quoted source omitted)).

¶14 As it did before the court of appeals, Central Transport contends that its destination was a terminal. In response, the Town inverts the language of 49 U.S.C. § 31114 and argues that the four types of carriers enumerated to carry goods to "points of loading and unloading" are also the only carriers covered by the statute when traveling to "terminals" and "facilities for food, fuel, repairs, and rest." As explained above, this is incorrect as a matter of statutory construction. The Town develops no further argument to directly contest that Central Transport's attempted destination was a terminal. The Town took the same approach below, leading the court of appeals to assume without deciding Central Transport's tractor-trailer was traveling to a terminal. See Town of Delafield v. Cent. Transp. Kriewaldt, 2019 WI App 35, ¶5 n.2, 388 Wis. 2d 179, 932 N.W.2d 423. Without the benefit of a contested argument on this point, we too assume without deciding the attempted destination was a terminal and therefore covered by the STAA.

¶15 The destination distinction is also important in light of Central Transport's arguments based on 49 U.S.C. § 31114(b), which is denominated an "exception" to the STAA's general reasonable access requirement under § 31114(a). It provides:

> Exception.——This section does not prevent a State or local government from imposing reasonable restrictions, based on safety considerations, on a truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that generally operates as part of a vehicle combination described in section 31111(c) of this title.

9

§ 31114(b). By its plain language, this exception only applies to a certain type of vehicle, "a truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that generally operates as part of a vehicle combination described in section 31111(c) of this title." Id. That language exactly mirrors one of the types of carriers under § 31114(a)(2) that may not be denied access to points of loading or unloading.[6] In the context of an already announced general reasonable access requirement, this exception appears to give states the authority to impose additional reasonable, safety-based restrictions on vehicles meeting this specific profile.

¶16 Central Transport has a different take. It asks this court to read the STAA's reasonable access requirement narrowly to only permit restrictions based on safety considerations. In other words, rather than a general reasonable access requirement that seems apparent from the text of 49 U.S.C. § 31114(a), Central Transport posits that § 31114(b) requires all restrictions on access to be based on safety, and safety alone. It asks us to rule in its favor in part on the grounds that the seasonal weight limitation authorized by state law and the

---

[6] And "absent textual or structural clues to the contrary" a particular word or phrase used more than once in the same act is understood "to carry the same meaning each time." State ex rel. DNR v. Wis. Court of Appeals, Dist. IV, 2018 WI 25, ¶30, 380 Wis. 2d 354, 909 N.W.2d 114.

10

Town's ordinance was not a safety-based restriction and is therefore expressly preempted by and in conflict with the STAA.[7]

¶17    This argument does not hold water under a plain reading of the text.  Nothing in 49 U.S.C. § 31114(b) suggests all local restrictions on access to statutorily protected destinations must be based on safety considerations.  Rather § 31114(b) plainly authorizes <u>additional</u> safety-based

---

[7] For purposes of our examination, the Town's ordinance adopts Wis. Stat. § 348.17(1), which provides:

> No person, whether operating under a permit or otherwise, shall operate a vehicle in violation of special weight limitations imposed by state or local authorities on particular highways, highway structures or portions of highways when signs have been erected as required by [Wis. Stat. §] 349.16(2) giving notice of such weight limitations, except when the vehicle is being operated under a permit expressly authorizing such weight limitations to be exceeded or is being operated as authorized under sub. 4.

The corresponding Town of Delafield, Wis. Ordinance § 7.01(1) provides:

> STATUTORY REGULATIONS.    Except as otherwise specifically provided in this chapter, all provisions of Chs. 340 to 348, Wis. Stats., describing and defining regulations with respect to vehicles and traffic for which the penalty is a forfeiture only, including penalties to be imposed and procedures for prosecution, are hereby adopted and by reference made a part of this chapter as if fully set forth herein. Any act required to be performed or prohibited by any statute incorporated herein by reference is required or prohibited by this chapter.    Any further amendments, revisions or modifications of statutes incorporated herein are intended to be made part of this chapter in order to secure uniform statewide regulation of traffic on the highways, streets and alleys.

11

restrictions on certain types of vehicles. If Congress intended to do what Central Transport suggests, it would have placed the safety-based language in § 31114(a), not created an exception in a separate subsection. The primary statutory standard for all covered vehicles and destinations is reasonable access.

¶18 The First Circuit Court of Appeals held likewise in affirming a district court's conclusion that a zoning ordinance limiting nighttime access to and from a local trucking terminal was not preempted. N.H. Motor Transp. Ass'n v. Town of Plaistow, 67 F.3d 326 (1st Cir. 1995). The argument there, as here, was primarily that the restriction was not allowable because it was not based on safety. Id. at 329.

¶19 Looking to the statute as a whole, the First Circuit observed that the reasonable access mandate extends far and wide to many local roads. Id. at 330. Disallowing local restrictions other than those based on safety "miles away from any interstate or national network highway" would not be consistent with the apparent goals of the federal law. Id. Instead, as the court explained, communities have many legitimate interests outside of safety——assuring quiet in a hospital zone, for example. Id. "It is difficult to conceive that Congress meant to exclude such a concern from the calculus used to determine whether a restriction infringes on 'reasonable access' to the federal highway system." Id.

¶20 The court further pointed to the text itself, along with the statutory history, as contrary to a safety-only reading, explaining: "the original 1982 Surface Act contained

12

the reasonable access language with no exception provision; so nothing in 1982 suggested that state access restrictions were limited to those based on safety." Id. The safety-based exception, added in 1984, is not worded in such a way and does not appear calculated to impose far more dramatic restrictions on local regulation. Id.; Tandem Truck Safety Act of 1984, Pub. L. No. 98-554, § 106 (codified as amended at 49 U.S.C. § 2312 (1988)).[8] In short, "[s]afety is obviously a paramount reason for limiting access; but, in our view, it is not the only reason permitted by Congress." N.H. Motor Transp. Ass'n, 67 F.3d at 331.

¶21 The Seventh Circuit has echoed this same understanding. Under 49 U.S.C. § 31114, "states are still free to exercise their police powers over state highways and local roads, so long as these regulations do not impede 'reasonable access' for commercial motor vehicles traveling between the Interstate and places such as terminals." Aux Sable Liquid Prods. v. Murphy, 526 F.3d 1028, 1036 (7th Cir. 2008). The Seventh Circuit explicitly rejected the notion that permissible state or local restrictions must be based on safety, agreeing with the First Circuit's decision in New Hampshire Motor

---

[8] This section was later renumbered from 49 U.S.C. § 2312 to 49 U.S.C. § 31114. See Act of July 5, 1994, Pub. L. No. 103-272.

Transport Ass'n.[9]  Id. at 1036 n.4.  The proper interpretation of "§ 31114(a) is that states may exercise their police powers for any number of reasons, so long as reasonable access is provided."  Id.

¶22 The statutory text and context, federal regulations, and federal circuit court caselaw reject a limitation on local restrictions based solely on safety concerns.[10]  The traditional power of state and local governments to regulate travel over local roads remains so long as reasonable access is not denied.  Central Transport's argument that the Town's ordinance authorizing seasonal weight limitations is expressly preempted based on its safety-focused reading of the STAA is incorrect.[11]

---

[9] A federal regulation further limits imposing restrictions within one mile from the national highway network to "specific safety reasons."  23 C.F.R. § 658.19(d).  This constraint is not applicable in this case as the Town's seasonal weight limitation was implemented more than one mile away from the interstate.  See Aux Sable Liquid Prods. v. Murphy, 526 F.3d 1028, 1036 n.4 (7th Cir. 2008).

[10] Only two federal circuit courts have addressed this question.  See Aux Sable Liquid Prods., 526 F.3d at 1036 n.4; N.H. Motor Transp. Ass'n v. Town of Plaistow, 67 F.3d 326, 331 (1st Cir. 1995).  Prior to these decisions, several federal district courts concluded differently.  See A.B.F. Freight Sys., Inc. v. Suthard, 681 F. Supp. 334, 345 (E.D. Va. 1988); N.Y. State Motor Truck Ass'n Inc. v. City of New York, 654 F. Supp. 1521, 1539 (S.D.N.Y. 1987); Consol. Freightways Corp. of Del. v. Larson, 647 F. Supp. 1479, 1492 (M.D. Pa. 1986), reversed on other grounds, 827 F.2d 916 (3d Cir. 1987).

[11] We therefore need not determine whether an express limitation placed on a "State," such as the one found in 49 U.S.C. § 31114(a), extends to local governments such as the Town.  See also Aux Sable Liquid Prods., 526 F.3d at 1034 n.3 (raising the same question, but determining deciding it was unnecessary).

14

Any conflict preemption analysis on these grounds likewise fails. The specific conflict preemption question remaining in light of the facts of this case is whether Central Transport was denied reasonable access to its destination.

## II. CENTRAL TRANSPORT WAS AFFORDED REASONABLE ACCESS

¶23 As we have explained, the preemption question under 49 U.S.C. § 31114, and the specific challenge brought by Central Transport, is fact-specific. Although states are not permitted to "define the term however they see fit," the broad and undefined phrase "reasonable access" reflects "a recognition on Congress's part that the manner and degree of access to and from the Interstate necessary to protect Congress's overarching goal of uniformity for commercial motor vehicles utilizing the Interstate will vary across the country." See Aux Sable Liquid Prods., 526 F.3d at 1036. "Our task is 'to determine whether, under the circumstances of this particular case, [the Town's ordinance] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" MITE Corp. v. Dixon, 633 F.2d 486, 491 (7th Cir. 1980) (quoted source omitted). "This inquiry requires us to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." Id. In that spirit, we turn to the facts precipitating this litigation, and the Town's implementation of its seasonal weight limitation.

15

¶24 On Monday, March 7, 2016, a Waukesha County deputy sheriff cited Central Transport for violating the Town's seasonal weight limitation when one of its drivers operating a tractor-trailer was on his way to deliver art supplies.  After the Lake County Municipal Court assessed a forfeiture in the amount of $1,532.50, Central Transport appealed to the circuit court.  The circuit court conducted a bench trial and granted Central Transport's motion to dismiss on preemption grounds.[12] The court of appeals reversed, concluding the Town's limitation afforded reasonable access and was not preempted.  Cent. Transp. Kriewaldt, 388 Wis. 2d 179, ¶6.  We granted Central Transport's petition for review.

¶25  While the circuit court made few factual findings, the relevant record is based on the testimony of the deputy sheriff who issued the citation and the Town's highway department superintendent.  This testimony was unrebutted; Central Transport offered no witnesses or evidence at the trial.  The record reflects the following.

¶26  In 2016, the Town's seasonal weight limitation went into effect when the superintendent believed, based on conditions on the ground during the spring thaw, that excess weight left certain roads particularly vulnerable to damage. The limitation prohibited vehicles weighing over six tons from traveling on certain Town roads.  The record is clear that

---

[12] The Honorable Michael J. Aprahamian, Waukesha County Circuit Court, presided.

16

Central Transport's offending tractor-trailer weighed more than six tons and traveled on roads where the weight limitation applied.[13]   The limitation was imposed on Monday, March 7, and remained in effect until Friday, March 11.[14]   The Town provided notice of the limitation through free-standing road signs posted on Friday, March 4.   It was also the Town's practice to post the seasonal weight limitation on its website and in a local paper.

¶27 Despite this one-week weight limitation, the Town's roads were not off limits.   The Town offered permits that allowed overweight vehicles to drive on otherwise restricted roads.   A permit could be obtained by calling the Town and going into the superintendent's office.   The superintendent would then issue a temporary permit along with a route the driver needed to take to minimize travel on restricted roads.   The superintendent testified that, to his knowledge, he never denied a request for a permit in the fifteen years he served in his role.   He also explained that many companies would call the Town to inquire if the seasonal weight limitation was in effect.   The Waukesha

---

[13] The superintendent and the deputy sheriff who issued the citation offered conflicting testimony with respect to whether the weight limitation was in effect on the specific intersection where the tractor-trailer was found.   Regardless, no party disputes that the tractor-trailer at some point traveled on a road with the noticed weight limitation in effect.

[14] The Town had no independent records regarding when the 2016 limitation was posted or the period it was in effect; the records were lost in moving to a new office.   However, the superintendent based his testimony on when the City of Pewaukee posted its seasonal weight limitation because the Town and City coordinated the implementation of their seasonal weight limitations.

County Sheriff's Office, according to testimony from the deputy sheriff who issued the citation, also received phone calls inquiring if any seasonal weight limitations were in effect in the county.  While the posted signs did not say anything about the permitting process,[15] the website included information regarding how to obtain a permit to travel on weight-limited roads and the phone number for the superintendent.

¶28 We read this record to reflect that at the time Central Transport received its citation, seasonal weight limitations were normal and known for those making commercial deliveries during that time of year in Wisconsin.  Calls to the highway department or sheriff's office to determine the nature and effective date of any limitations were likewise commonplace.  The record also indicates that Central Transport's truck could have obtained a permit to reach its destination, and if past is prologue, likely would have received one if so requested.[16]

---

[15] The posted signs provided:  "TEMPORARY BY ORDER OF THE TOWN OF DELAFIELD WEIGHT LIMIT 6 TONS."

[16] Central Transport contends that the potential of patchwork seasonal weight limitations ranging in time, duration, and scale presents too much of a burden for commercial trucking outfits, especially those, like Central Transport, that do not travel regularly in the area.  However, Central Transport presented no evidence at trial to substantiate those arguments.  Our decision here must be made in light of and specific to the facts presented at trial.  Our decision is not a review of the Town's seasonal weight limitation generally, nor is it an opinion regarding seasonal weight limitations that might be imposed by other state and local governments.  We review only the Town's application under this record and in this instance.

¶29 Taken together, we conclude the specific facts of this case demonstrate that Central Transport had reasonable access to its destination. Central Transport's driver could have checked the website or called ahead to determine whether any restrictions were in effect. Or, upon seeing the seasonal weight limitation was posted, the driver could have contacted the Town, driven to the office, and obtained a permit that would have allowed the tractor-trailer to lawfully traverse necessary roads. The weight limitation was also based on a reasonably tailored and well-founded police power consideration—damage to roads that were especially vulnerable during the spring thaw.

¶30 While such a system did not provide Central Transport unfettered access to its delivery point, it also did not prohibit all access. Cf. Aux Sable Liquid Prods., 526 F.3d at 1037 (holding that a weight restriction prohibiting all access to a road was not reasonable access); N.H. Motor Transp. Ass'n, 67 F.3d at 329, 331 (concluding that a limitation of access at night, in the interest in curbing noise, odor, and dust in residential areas, granted reasonable access). The weight-limited roads were, plainly put, reasonably accessible through a readily available permit process.[17] Central Transport had a

---

[17] Central Transport argues a scheme where permits are always granted would have no purpose and is not reasonable. But a weight limitation would surely discourage and deter unnecessary driving on subject roads. The permit system represented in the record before us would also give a Town-prescribed route for drivers to take that would minimize road damage while still allowing drivers to reach their destination.

reasonable means of getting from the highway to its destination, the main concern of the STAA. In light of the presumption that the state retains its police powers, and that this federal restriction should be read narrowly, we conclude the implementation and enforcement of the Town's ordinance, which Central Transport admits it violated, does not conflict with and therefore was not preempted by the STAA and its related regulations.

### III. CONCLUSION

¶31 Central Transport's tractor-trailer had reasonable access from the highway to its intended destination when it was cited for violating the Town's seasonal weight limitations on certain Town roads as authorized by the Town's ordinance. The facts of this case demonstrate Central Transport could have lawfully made its delivery by obtaining a permit, which was readily available. Therefore, the Town's implementation of its weight-limit ordinance in 2016 was not preempted by the STAA, and the citation was permissibly issued to Central Transport. This cause is remanded to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded to the circuit court.

¶32 DANIEL KELLY, J. *(concurring).* A truck driver for Central Transport Kriewaldt ("Central Transport") was delivering goods to a customer at a residential address when he was ticketed for violating the Town of Delafield's seasonal permitting system. Central Transport says Delafield may not have such a system because it interferes with its "reasonable access" between an interstate freeway and a "terminal" in violation of 49 U.S.C. § 31114 (2012) (the Surface Transportation Assistance Act ("STAA")). The court's opinion promised it would determine whether the seasonal permitting system is consistent with the STAA, but its analysis stopped well short of its goal. So although I concur with the court's judgment, I have a different reason for doing so.

¶33 The goal the court set for itself was not an easy one. In fact, unlocking the meaning of "reasonable access" is a bit of a paradox, which was succinctly described in Aux Sable Liquid Prod. v. Murphy, 526 F.3d 1028 (7th Cir. 2008). There, the court recognized that Congress had made a decision "not to define 'reasonable access' more specifically." Id. at 1036. But this, it said, was not an invitation for states "to define the term however they see fit" because "[i]f states were truly left to define this term on their own, the express preemption language in § 31114(a) would be rendered effectively meaningless, since states would be able to define 'reasonable access' so as to allow state and local authorities to severely impede commercial motor vehicles' access to the Interstate." Id. at 1036, 1035. And that would destroy the uniformity the

1

STAA was created to achieve. That's one side of the paradox. Here's the other:

> [T]his broad language can be viewed as reflecting a recognition on Congress's part that the manner and degree of access to and from the Interstate necessary to protect Congress's overarching goal of uniformity for commercial motor vehicles utilizing the Interstate will vary across the country depending on factors such as whether the Interstate is cutting across rural or metro areas, traffic density on the road, and other considerations.

Id. at 1036. So, at least according to Aux Sable Liquid Prod., the STAA requires "uniformity for commercial motor vehicles utilizing the Interstate" (meaning states may not define "reasonable access" for themselves), but the uniformity will "vary across the country." Id. I'm not saying that circle can't be squared, but finding the edges requires work that the majority opinion simply didn't do.

¶34 I suppose the easiest response to a paradox is to ignore it, and that seems to have been our choice today. The court says Delafield's seasonal permitting process was reasonable, but did so without discussing, or even acknowledging, the uniformity mandate that is the motivating rationale for the STAA's existence. Instead, we discussed the benefits of the permitting system and made some case-specific observations such as that "seasonal weight limitations were normal and known for those making commercial deliveries during that time of year in Wisconsin[]"; that permits could be obtained on a 24/7 basis; and that a permit has never been denied. Majority op., ¶28. And the court's conclusion was explicitly case-specific: "[T]he specific facts of this case

2

demonstrate that Central Transport had reasonable access to its destination." Id., ¶29.

¶35  If we had been given explicit authority to develop our own, state-specific definition of "reasonable access," I don't know how it would differ from what we accomplished today. Every consideration used to assess whether the permitting system interfered with "reasonable access" comprised nothing but our own sense of what is reasonable. We made no effort to demonstrate how this would fit into the Congressionally-mandated "uniform standards for commercial motor vehicles,"[1] or even what the points of reference for such an analysis would be. What we are left with, therefore, is the Wisconsin Supreme Court's own sense of what "reasonable access" entails. That may or may not also be consistent with the uniformity required by the STAA, but nothing in our opinion explains why it might be. Therefore, the court didn't finish the analysis, and so I cannot join it.

¶36  I reach the same conclusion as the court, however, for a more straightforward reason. Central Transport had recourse to the STAA for the purpose of striking down the ordinance that was the source of authority for Delafield's citation. As the proponent of this proposition, it bore the burden of establishing that the STAA preempted that ordinance. See, e.g., Sausen v. Town of Black Creek Bd. of Review, 2014 WI 9, ¶19, 352 Wis. 2d 576, 843 N.W.2d 39 (quoting Loeb v. Bd. of Regents, 29

---

[1] Aux Sable Liquid Prod. v. Murphy, 526 F.3d 1028, 1036 (7th Cir. 2008).

3

Wis. 2d 159, 164, 138 N.W.2d 227 (1965)) ("[A] party seeking judicial process to advance his position carries the burden of proof[.]"); see also Upper Lakes Shipping, Ltd. v. Seafarers' I. Union, 22 Wis. 2d 7, 17, 125 N.W.2d 324 (1963).

¶37 The first step in such an undertaking is establishing that the route it was driving was covered by the federal statutes. The STAA is applicable to travel between certain interstate highways (of which Interstate 94 is one) and

> terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers, motor carriers of passengers, any towaway trailer transporter combination (as defined in section 31111(a)), or any truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that generally operates as part of a vehicle combination described in section 31111(c) of this title.

49 U.S.C. § 31114(a)(2). This provision describes two categories of potential destinations. The first is narrow, comprising only "terminals, facilities for food, fuel, repairs, and rest," but it contains no limitations on the types of carriers traveling to those destinations. Id. The second category of potential destinations is much broader; it encompasses all "points of loading and unloading." Id. But this category applies only to a subset of carriers defined as "household goods carriers, motor carriers of passengers, any towaway trailer transporter combination (as defined in section 31111(a)), or any truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that

4

generally operates as part of a vehicle combination [colloquially known as a single 'pup' trailer]." Id.

¶38 For the STAA to apply in this case, therefore, Central Transport had to describe where it fit in the matrix of destinations and carrier types. It settled on the claim that its truck was headed to a "terminal" when its driver was ticketed. But the claimed "terminal" was a residence. At least two federal courts have noted that not every delivery address is a "terminal" within the meaning of the STAA: "Points of loading and unloading, unlike locations of terminals, necessarily change with great frequency and are dependent upon the locations of the customers serviced by trucking companies." A.B.F. Freight Sys., Inc. v. Suthard, 681 F.Supp. 334, 344 (E.D. Va. 1988) (quoting Consolidated Freightways v. Larson, 647 F.Supp. 1479, 1494 (M.D. Pa. 1986). So although every terminal is a place of loading and unloading, not every place of loading and unloading is a terminal.[2] If it were not so, there would be no point in describing the two categories of destinations.

---

[2] See, e.g., 23 C.F.R. § 658.19(a):

   No State may enact or enforce any law denying reasonable access to vehicles with dimensions authorized by the STAA between the NN and terminals and facilities for food, fuel, repairs, and rest. In addition, no State may enact or enforce any law denying reasonable access between the NN and points of loading and unloading to household goods carriers, motor carriers of passengers, and any truck tractor-semitrailer combination in which the semitrailer has a length not to exceed 28 feet (28.5 feet where allowed pursuant to § 658.13(b)(5) of this part) and which generally operates as part of a vehicle combination described in §§ 658.13(b)(5) and 658.15(a) of this part.

5

¶39 Unfortunately, everyone seems to have just assumed that a residence qualifies as a terminal within the meaning of 49 U.S.C. § 31114(a)(2). The circuit court did not address this question. The court of appeals candidly admitted it wasn't deciding it either. Town of Delafield v. Cent. Transp. Kriewaldt, 2019 WI App 35, ¶5 n.2, 388 Wis. 2d 179, 932 N.W.2d 423 ("Because the Town develops no argument challenging Central Transports' position that the residence where the art supplies were to be delivered constitutes a 'terminal,' we assume, without deciding, that it does."). Nor did we choose to take it up.[3] When a party fails to contest an opponent's proposition, we quite frequently take it as admitted and proceed with our analysis accordingly. But we don't discern the meaning of statutory terms based on whether the parties choose to contest them. We have an independent duty to ensure our understanding of the statute is accurate. A "terminal" does not encompass a residential address simply because Delafield chose not to contest Central Transport's assertion.

¶40 I think we should have resolved this case based on Central Transport's failure to establish that its destination was a terminal. This is important because what constitutes "reasonable access" could be very different depending on which of the STAA-defined categories of destinations we are

_____

(Emphasis added.)

[3] See majority op., ¶14 ("Without the benefit of a contested argument on this point, we too assume without deciding the attempted destination was a terminal and therefore covered by the STAA.").

6

considering. The categories don't appear to be arbitrary——they describe very different types of places that are likely to be present in very different parts of a town, village, or city. Terminals (that is, fixed points of cargo transfer) as well as places where commercial truckers go for food, fuel, repairs, and rest are generally physically concentrated near interstate freeways, and are consequently served by a more robust infrastructure. The types of destinations described in the second category can be anywhere, including residential neighborhoods and other sensitive areas (such as near hospitals, playgrounds, etc.) where the infrastructure may not be as sturdy. What constitutes "reasonable access" for one category of destinations may be entirely unreasonable for the other. But because we just assumed Central Transport's destination was a terminal, our pronouncement on "reasonable access" applies to both without the benefit of ever considering what relevant distinctions might exist between the two categories. This is especially problematic in light of the paradox that Delafield's ordinance (if covered by the STAA) must be in some manner in keeping with uniform standards. Presumably, those uniform standards will vary depending on the category of destinations to which they apply.

¶41 For these reasons, I respectfully concur in the court's judgment, but I do not join the opinion.

¶42 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

7